### PEOPLE v. FRECHETTE.

1. CRIMINAL LAW—EVIDENCE—LIE-DETECTOR TESTS—OPINION OF OPERATOR.
   Trial court properly excluded opinion of police officer, who administered lie-detector test to one accused of first-degree murder, as the results of test are uncertain and to admit them would be prejudicial to defendant (CL 1948, § 750.316).

2. EVIDENCE—LIE-DETECTOR TESTS.
   Results of lie-detector tests are not admissible in evidence.

3. CRIMINAL LAW—LIE-DECTECTOR TEST—EVIDENCE OF ADMINISTRATION—RESULTS—INFERENCES.
   Reversible error in trial on charge of first-degree murder *held*, not committed in the admission in evidence of administration of lie-detector test without objection but ruling of trial court

---

REFERENCES FOR POINTS IN HEADNOTES
[1-5] 20 Am Jur, Evidence § 762.
   Physiological or psychological truth and deception tests. 23 ALR2d 1306.
[6] 39 Am Jur, New Trial § 86.
   Juror's reading of newspaper account of trial in criminal case during its progress as ground for mistrial, new trial, or reversal. 31 ALR2d 417.
[7] 39 Am Jur, Pardon, Reprieve and Amnesty §§ 62, 63.

sustained objection to testimony that administrator of the test had formed an opinion as to whether defendant had made a truthful answer as to any particular question and excluded testimony as to what that opinion was, since there is more than 1 permissible inference which might be drawn from objection to such testimony (CL 1948, § 750.316).

4. SAME—LIE-DETECTOR TESTS—ADMINISTRATION OF TEST.

Admission in evidence of administration of lie-detector test in case of first-degree murder wherein opinion of test administrator was excluded from the jury was not reversible error, where defendant took stand in own behalf, and court properly instructed on the credibility of defendant (CL 1948, § 750.316).

5. SAME—LIE-DETECTOR TEST—TAKING IN OPEN COURT.

Trial court properly denied defendant's offer to take lie detector test in open court before the jury as the results of test were scientifically uncertain.

6. JURY—UNBIASED JURY—PRESS COVERAGE.

Conviction for first-degree murder will not be reversed wherein jurors admitted prior knowledge of case received from press accounts and hearing radio news broadcasts, where sparse record will not support a conclusion that there was a miscarriage of justice (CL 1948, § 769.26).

7. APPEAL AND ERROR—EXECUTIVE CLEMENCY.

Court of Appeals will not reverse conviction for first-degree murder when record presents strong case for executive clemency, but contains no reversible error (CL 1948, § 750.316).

Appeal from Livingston; Collins (Joseph H.), J. Submitted Division 2 January 5, 1966, at Lansing. (Docket No. 1086.) Decided May 11, 1966. Leave to appeal granted by Supreme Court November 14, 1966. See 378 Mich 738, 380 Mich 64.

Clarence R. Frechette was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Charles B. Gatesman,* Prosecuting Attorney, for the people.

*E. Reed Fletcher,* for defendant.

T. G. KAVANAGH, P. J.  In 1935 after a trial which attracted nationwide publicity, Clarence R. Frechette was convicted by a jury of first-degree murder[1] and sentenced to life in prison.

He claimed he acted in self-defense and has steadfastly maintained his innocence.  After repeated attempts to obtain a new trial, upon the appointment of appellate counsel he was granted leave to bring the instant appeal.

The matter is presented to us under conditions which make a complete review impossible.  Most of the records have been lost in the 31 years since his conviction and we have only excerpts from some of the testimony, the *voir dire* examination, the calendar entries, the court's charge, and the records relating to his sentencing.  Contemporaneous newspaper stories on the case are also included as exhibits.

From this has been distilled but one complaint on appeal.  It is charged that the court erred in his treatment of proffered evidence of lie detector tests.

The court permitted the prosecution to introduce evidence that the defendant took a lie detector test. The State police officer who gave it was permitted to describe the machine, the test, the theory of its operation, and the fact of its administration to the defendant, all without objection on the part of the defendant's counsel.

When the officer was asked the question:

"*Q.* From the reading of those grams did you form an opinion as to whether or not the subject, Clarence Frechette, made a truthful or untruthful answer to any particular question on the gram?

"*A.* Yes, I have."

---

[1] CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).—REPORTER.

The defense interposed an objection to the testimony as to whether he formed an opinion and to giving the opinion.

The court sustained the objection and then said:

"I might amplify the reason why the court sustains the objection to the introduction of the report and records known as polygrams. In regard to the offering in evidence of the record known as polygrams made by the apparatus known as a lie detector used on the defendant in this case, the court is of the opinion that as yet, as a matter of law, such an instrument is not perfected to such an extent that its record of any test made by it should be used or received in evidence in court."

Whereupon the prosecution said:

"I wonder if the court would permit counsel to make a statement. Of course, I didn't state to the court the reason why the polygrams were being admitted. We didn't of course offer them as any positive proof of any fact in issue in this case, but merely for the benefit of the jury, for them to draw any inference from them they might care to."

And the court said:

"I will state on the record, that is the statement of counsel permitting the examining in relation to the polygrams, that he didn't claim for it perfection at all, but thought he would introduce it and leave it for the consideration of the jury, that is what he stated at the time; however, the court is of the opinion, as I already stated, it wouldn't be of any evidential value to the jury on account of—well, it seems to the court an uncertainty and to admit it perhaps would be prejudicial in view of the objection of the defendant."

Later on, in the absence of the jury, the defense offered to take a lie-detector test in open court and the court refused the offer.

The defendant asserts that the only inference the jury could draw from the testimony (and presumably the remarks of the prosecutor and the judge) was that the defendant was objecting to the admission of a scientific conclusion that the defendant was guilty in order to hide the fact from them.

He claims this brings him within the rule of *People* v. *Welke* (1955), 342 Mich 164, 169, where the Court says:

"We believe reversible error was committed by allowing the testimony that clearly disclosed to the jury that not only was the lie-detector test made but the fact that the man who made the test concluded and informed the defendant he was lying. The fact that the exact results of the test were not testified to does not correct this error. It is a well-accepted principle in this State that results of a lie-detector test are not admissible in evidence."

While it is true that the jury might draw such an inference we cannot agree that it is the only inference they could draw. An inference which to us seems more probable is that at one point or other the defendant lied in his response to some test question.

But here the defendant's veracity was squarely before the jury, for he took the stand in his own defense and the jury considered his credibility under wholly proper instructions.

Here the court sustained the only objection the defense made to the questioning and the court's subsequent ruling against the defendant's offer to take the test in open court was consistent, and in our view correct. See *People* v. *Becker* (1942), 300 Mich 562 (139 ALR 1171).

Recognizing the unfortunate inadequacy of the record we can only say that a careful examination of it convinces us of no reversible error.

The sensational press coverage of this killing indicated in the clippings attached as exhibits raises serious doubts about the fairness of the trial in the community from which these jurors came. Although they all indicated prior knowledge of the case— either by reading press accounts or hearing radio news broadcasts—or both, this sparse record will not support a conclusion that there was a miscarriage of justice. See CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096).

While there are many indications that a strong case might be made for executive clemency, finding no reversible error we are constrained to affirm the trial court.

Affirmed.

Burns and McGregor, JJ., concurred.