Argued March 1, reversed and remanded May 18, 1966

# STATE OF OREGON *v.* WATSON
### 414 P. 2d 337

*Paul R. Meyer* and *Barnes H. Ellis*, Portland, argued the cause for appellant. With them on the briefs was Carl R. Neil, Portland.

*Robert Thomas,* Special Deputy District Attorney, Klamath Falls, and *James J. Clancy,* Sun Valley, California, argued the cause for respondent. With Thomas on the brief were Sam A. McKeen, District Attorney, and Harry D. Lewis, Deputy District Attorney, Klamath Falls.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and SCHWAB, Justices.

## GOODWIN, J.

Defendant appeals from a judgment of a fine of $100 imposed for violating ORS 167.151① (disseminating obscene matter).

---

① ORS 167.151. "(1) No person shall knowingly disseminate obscene matter. A person disseminates obscene matter if he exhibits, sells, delivers or provides, or offers or agrees to exhibit, sell, deliver or provide, or has in his possession with intent to exhibit, sell, deliver or provide any obscene writing, picture, motion picture, device, record, material or other representation or embodiment of the obscene.

"(2) As used in subsection (1) of this section, matter is obscene if, considered as a whole, its predominate theme appeals to prurient interest and if it is patently offensive and goes substantially beyond the customary limits of candor in describing or representing such matter with reference to ordinary persons.

"(3) In any prosecution for an offense under this section, evidence shall be admissible, as relevant to a determination of whether or not the predominant theme of the matter appeals to prurient interest, to show artistic, literary, scientific or educational merit of the matter.

"(4) In any prosecution for a violation of this section, it shall be relevant on the issue of knowledge to prove the advertising, publicity, promotion, method of handling or labeling of the matter, including any statement on the cover or back of any book or magazine.

"* * * * *".

In this appeal, defendant seeks comprehensive answers to a number of state and federal constitutional questions which we do not reach. We must reverse the conviction because of error in receiving opinion evidence.

■ A publication is not obscene unless the state establishes that: (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value. *Memoirs v. Massachusetts,* 383 US 413, 86 S Ct 975, 16 L Ed 2d 1 (1966).

We may assume, without deciding, that a book might be so bad as to demonstrate on its face (a) its dominant theme, (b) its patent offensiveness, and (c) its utter lack of "redeeming social value." The state in this case, however, did not rely upon *res ipsa loquitur.* The prosecution called as an expert witness the then incumbent district attorney of the county. He personally had purchased the book and had signed the complaint. The district attorney was permitted to testify, over timely objection, that in his opinion the book in question satisfied all statutory requirements (as those requirements must be interpreted in light of *Roth v. United States,* 354 US 476, 77 S Ct 1304, 1 L Ed 2d 1498 (1957), and subsequent decisions of the United States Supreme Court.)②

---

② ORS 167.151 (3) reads as if the presence of literary merit is an affirmative defense, but the United States Supreme Court has held that the protection of the First and Fourteenth Amendments applies to all printing unless the government can prove that it meets the three requirements enumerated in Memoirs v. Massachusetts, supra. The burden thus rests upon the state to prove all the necessary elements of obscenity.

██ It is manifest error to permit a witness, who has no special qualification so to testify, to tell the jury that in his opinion a crime had been committed. The witness revealed that he knew little of relevant contemporary community standards[®] and virtually nothing of contemporary literature. (Since 1939 or 1940, he admitted, he had read no books outside his professional field, and only the *Readers' Digest,* religious papers, and news periodicals in other fields. Further, he said he had not read beyond the first two chapters of the book in question.)

Since we are unable to say that the introduction of so-called expert testimony from a patently unqualified witness did not prejudice the defendant, the judgment cannot stand.

Finally, since the case may be tried again, we notice those assignments of error challenging the instructions. We need not pass upon the validity of each of the instructions at this time, because recent decisions of the United States Supreme Court have rendered them obsolete. The instructions given below were apparently based upon the trial court's understanding of *Roth v. United States,* supra. That decision has been qualified in part by *Memoirs v. Massachusetts,* supra. Earlier case law in this field has been further expanded by the pandering theory outlined in *Mishkin v. New York,* 383 US 502, 86 S Ct 958, 16 L Ed 2d 56 (1966), and *Ginzburg v. United States,* 383 US 463, 86 S Ct 942, 16 L Ed 2d 31 (1966). It is not necessary at this time to speculate upon the implications of these decisions as they may apply to ORS 167.151 (4).

Reversed and remanded.

---

[®] See Manual Enterprises v. Day, 370 US 478, 82 S Ct 1432, 8 L Ed 2d 639 (1962), holding that the relevant "community standard" under the federal statute is a national standard of decency. See also Annotation in 5 ALR3d 1158, 1182-1185 (1966).

PERRY, J., dissenting.

I am unable to agree with the majority that this case should be reversed. They reverse the case because of error in receiving purported expert testimony.

The district attorney who had purchased the book testified that in his opinion the book "taken as a whole has a predominant theme that appeals to prurient interests." He admitted he had never read the book in its entirety. Therefore, he could not know the whole book and should not have been permitted to state his opinion.

However, I do not believe this error is sufficiently prejudicial to warrant a reversal. In my opinion, expert testimony in this field is not desirable. The jury is instructed as to prurient interests and the jurors should judge the issue on the basis of the writing itself under the instruction given. The district attorney did not testify that he was an expert on literary merit. It is in this field where "social value" becomes an issue of fact and expert testimony becomes admissible. Note: The Use of Expert Testimony in Obscenity Litigation, 1965 Wis L Rev at p 126.

The book itself was introduced into evidence and read to the jury. To my knowledge I have never read a book which was more dedicated to pornography. The book having been introduced into evidence, each juror knew without a shadow of doubt that the predominant theme of the book was in its entirety an appeal to prurient interests.

The majority state that the State "did not rely upon res ipsa loquitur." It seems clear to me that to establish that the book was utterly lacking in redeeming social value they must have done so for no expert

opinion was expressed upon this issue. In my opinion, no expert testimony was necessary.

I do not know nor do I believe anyone, expert or otherwise, is capable of locating the exact boundaries of that indefinable term "social value." I presume, however, under presently acceptable standards, to rise above the lowest scale of that term, a writing must in some way be considered as tending to stimulate the mind of its reader intellectually, entertain him, teach him a moral, or possess literary style.

This book does not possess a single one of these qualities. Literarily it has the effluvium of a manure pile. It teaches no moral, educates no one, stimulates only extra-marital sexual drive and perversion, and could entertain only a moron.

In my opinion, neither a literary critic nor the average man could successfully argue there is any social value in "Lust Pad."

This book speaks for itself. No expert testimony should be required where the obvious purpose is pure pornography.

I would affirm the judgment.