PEOPLE v. LIGGETT.

Opinion of the Court.

1. Criminal Law—Witnesses—Testimony as to Codefendant.
   Ruling of trial court that defendant, who had confessed on the
   stand to the crime of breaking and entering in the nighttime
   with intent to commit a larceny, could not answer question
   concerning codefendant's participation in the perpetration of
   the crime held, correct, where the solicited answer required
   the witness to form his own judgment as to the meaning of
   the phrase "participate in the perpetration" and then apply
   that judgment as a test against the acts, if any, of codefend-
   ant, and since the question went to the elements of the crime
   in the form in which the question was framed and it called
   for a conclusion of law by the witness, there could be no
   assurance that the answer would be limited to a factual recital
   (CL 1948, § 750.110).

2. Same—Jury Instruction—Elements of Crime.
   Trial judge should instruct the jury in criminal cases as to gen-
   eral features of the case, define the offense, and indicate that
   which is essential to prove to establish the offense, even in the
   absence of a request for such instructions.

3. Same—Appeal and Error—Instructions—Legally Essential
   Ingredient of Crime—Erroneous or Misleading Charge.
   It is reversible error in a prosecution for crime for a trial judge
   to omit from his charge to the jury a legally essential in-
   gredient of the crime, or to include an erroneous or misleading
   charge.

---

References for Points in Headnotes
[1] 58 Am Jur, Witnesses § 565 et seq.
[2–4] 53 Am Jur, Trial § 639.
[5–11] 53 Am Jur, Trials § 56 et seq.
[12, 13] 5 Am Jur 2d, Appeal and Error § 778,

4. SAME—EVIDENCE—JURY—INSTRUCTIONS.
   A defendant in a criminal case has a right to have a properly instructed jury pass upon the evidence.

5. SAME—JOINT TRIALS—PROTECTION OF RIGHTS OF EACH DEFENDANT.
   The rights of each defendant must be carefully protected by the trial judge whenever defendants in criminal cases are tried together.

6. SAME—JOINT TRIAL—SEPARATE OFFENSES.
   No defendant, jointly tried, should be convicted of the crime of another defendant.

7. SAME—JOINT TRIAL—CONFUSION OF IDENTITY OF PARTIES.
   Defendant, jointly on trial with another for the crime of breaking and entering in the nighttime with intent to commit a larceny, where 3 men were involved but only 2 were charged, *held*, to have been denied a fair trial by an impartial jury, where at the outset of the trial, the judge neglected to identify the defendants or their purported roles, there may have been confusion of identities during the trial itself, and in the charge to the jury there was a hopeless confusion of defendants (US Const, Am 6; Mich Const 1908, art 2, § 19; Mich Const 1963, art 1, § 20; CL 1948, §§ 750.110, 769.26).

8. SAME—CONFUSION OF DEFENDANTS—ATTEMPTED CORRECTION BY TRIAL JUDGE.
   Attempt by trial judge to cure possible confusion of identity of joint defendants and their roles in the crime after the jury had arrived at its verdict *held*, too late.

9. SAME—CONFUSION OF IDENTITY OF PARTIES—INSTRUCTIONS.
   It cannot be said with any certainty that the judge did not mislead the jury with his charge, when he candidly admits to his own confusion which was so great the identities of the two defendants were incorrectly stated 11 times in his charge to the jury and when he attributed admission of two previous convictions to the defendant who had not taken the stand.

10. SAME—CONVICTION OF OWN CRIME.
    If a man is to be convicted of a crime, it should be crystal clear that he was convicted of his own crime, not that of a confessed codefendant.

11. SAME—BREAKING AND ENTERING—INSTRUCTIONS.
    Conviction of defendant of crime of breaking and entering in the nighttime with intent to commit a larceny *held*, improper, where it was not demonstrated beyond a reasonable doubt that the trial judge's confusing instructions did not contribute to defendant's conviction (CL 1948, § 750.110).

12. CRIMINAL LAW—HARMLESS ERROR.

> *It is the fully matured appellate policy of this State in criminal cases, as in civil cases, that harmless error is nonreversible error (CL 1948, § 769.26).*

13. SAME—HARMLESS ERROR—MISCARRIAGE OF JUSTICE.

> *Defendant's contentions that trial judge committed several errors during trial prior to taking the jury's verdict held, not reversible error, as record shows judge committed no more than harmless error, and it does not appear affirmatively in the record that the error complained of has resulted in a miscarriage of justice (CL 1948, § 769.26).*

Appeal from Court of Appeals, Division 1, Quinn, P. J., Fitzgerald and T. G. Kavanagh, JJ., affirming Recorder's Court, Gillis (Joseph A.), J. Submitted December 7, 1966. (Calendar No. 18, Docket No. 51,411.) Decided March 7, 1967.

1 Mich App 261, reversed.

Lawrence Liggett was convicted of breaking and entering in the nighttime with intent to commit larceny. Defendant appealed. Judgment affirmed by Court of Appeals. Defendant appeals. Reversed and remanded for vacation of sentence and new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*Dominick R. Carnovale,* for defendant.

ADAMS, J.   At about 2 a.m., November 23, 1963, Alfred Sanders was driven by his brother, Lester Sanders, to the house of Lawrence Liggett. Alfred Sanders knocked several times on Liggett's door and awakened him. After a discussion, Liggett dressed and drove his car to Harper avenue, followed by the two Sanders. They drove to the vicinity of Ray's Radio Clinic. Alfred Sanders broke into the TV shop and took two TVs. He was apprehended by Officers Clark and Stank as he was seen crossing Harper approximately 30 feet from the TV shop. Officers Kelly and Knaus were cruising west on Harper. Kelly observed two men run out of the areaway to the TV shop and Knaus noticed that the door was busted. Kelly chased Liggett on foot up to an expressway fence where he apprehended him. Knaus pursued the Sanders' car and several blocks away apprehended Lester Sanders. Alfred Sanders and Lawrence Liggett were charged with breaking and entering in the nighttime.[1] No charge was placed against Lester Sanders.

Alfred Sanders and Lawrence Liggett were tried together. During the selection of the jury, the judge made this statement:

"It is the claim of the people that the owner closed his place of business around 8 at night. At about 3 in the morning, the two patrolmen saw defendant Alfred Sanders carrying two Admiral television sets in the neighborhood. That they arrested him and claimed that he admitted breaking into the TV store. Later on, about this time, a Sergeant Kelly and another patrolman observed *the two men running.* They took after them. *The sergeant arrested the defendant. I guess it was one or the other,* but they were arrested in the neighborhood.

"*The car belonging to one of the defendants,* was parked in the neighborhood and *one of the defend-*

---

[1] CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305).—REPORTER.

*ants had the two television sets.* An investigation disclosed a window had been broken and entrance had been gained. That is in substance the theory of the people." (Emphasis supplied.)

The judge cautioned the jury that he was merely telling it the theory of the people's case. However, it will be seen that the judge did not distinguish the persons involved or the purported role of each in the breaking and entering.

Alfred Sanders took the stand and confessed to the burglary. Upon direct examination by his attorney, he testified as follows:

"*Q.* Now, after getting out of the car, what did you do, if anything?

"*A.* Well, I walked away from them. I walked approximately 50 or 60 feet from Harper street, and then I turned around and came back. I put my shoulder to the door across the street. I put my shoulder to the door of the TV shop and broke the glass and went in and come out with the two TVs.

"*Q.* You did this on your own, is that correct?

"*A.* Yes, I did.

"*Q.* Did you have any assistance in the perpetration of this offense?

"*A.* No.

"*Q.* Is there anything else you want to say to this jury?

"*A.* Yes, Lawrence Liggett,[2] [Lester Sanders] my brother, he didn't—

"*The Court* (interposing). No, proceed by question and answer.

"*Q.* (continuing) *Did your brother Lester in any way participate in the commission of this crime?*

"*A.* No, he didn't.

---

[2] Note the confusion of names here. Query—Error by the court stenographer or by defendant Alfred Sanders?

"*Q. Did the defendant Lawrence Liggett in any way participate in the perpetration—*

"*Mr. Connor* (interposing). I am going to object.

"*The Court.* Of course I will sustain the objection. It is a question of fact." (Emphasis supplied.)

The judge in part charged the jury as follows:

"You should consider the whole picture and it is a contention of the people that Lawrence Liggett, the defendant here, came from the doorway and ran and was apprehended by the sergeant. *You heard the story of the defendant. His brother had him drive him to the home of Sanders.* He previously had a discussion with Sanders *and asked the one Sanders* to point out where this radio shop was on Mack avenue. *Sanders, at 2 or 2:30 in the morning, got his car out and drove up there after which he told his brother to go home.* His brother did not and *Liggett, according to his own testimony, went in and burglarized the store.* \* \* \*

"Another very important test is their interest or lack of interest in the outcome of the case. It would seem if you believed the sergeants, you have a right to take into consideration their method and manner given in their testimony and interest or lack of interest. *They stated that they chased Sanders and young Liggett from the store.* One officer took after the car and the other apprehended him near the freeway fence. The theory of the people, if it is right, is that Sanders—that they were both scared away *and, of course, Liggett was apprehended the moment he got a few feet from the door.*

"As to the prosecutor's discretion, it seems there is a lack of testimony to connect up the brother, and mere knowledge is not sufficient. There must be an overt act. There must be cooperation and *the people claim that there was cooperation between Sanders and Liggett.* He pointed out the store. *They were going to use his car. The other brother has no record. Now, in Liggett's cross-examination, it was*

*brought out that he has two previous convictions for burglary.* * * *

"Now, I am leaving the matter to you, but, as I say, all of the elements of burglary have been testified to. It will be up to you to determine whether it is nighttime and then *the other question of fact is did defendant Sanders have any knowledge, and did he cooperate, et cetera.* You are to take all of these facts into consideration in arriving at a verdict as to Liggett and Sanders and determine whether or not they are guilty of breaking and entering a business place in the nighttime with intent to commit larceny. * * *

"*Mr. Connor* [Assistant Prosecuting Attorney]. Your Honor, *I believe you said that Sanders was the one that admitted the breaking and entering. It was not Sanders that made the admission on the stand. Liggett*[3] *was the one that made the admission,* Your Honor.

"*The Court.* I may have misspoke myself. I may have gotten confused. However, the jury will remember the testimony and will also remember which one took the stand." (Emphasis supplied.)

After the jury had reached a verdict and a roll call was taken by the court clerk, the following occurred:

"*The Court.* Before I take the verdict, I did explain to you that in discussing the case with you in your final charge, I did get confused by calling Sanders—Liggett. Is that straight in your minds, now?

"*The Jury.* Yes.

"*The Court.* You have been concentrating on this. However, in the meantime instead of concentrating on this one case I have been taking pleas and have another case going on and, in addition to that, I have had a couple of sentences this morning, et

---

[3] Note confusion at this point by the assistant prosecutor. Alfred Sanders made the admission.

cetera. So, you can see I am not able to concentrate like you can. But, before I take your verdict, you know who took the stand and who did not? You remember the circumstances as to who was apprehended by the sergeant and was captured by the two patrolmen?

"*The Jury.* Yes.

"*The Court.* I did not mislead you in any way?

"*The Jury.* No.

"*The Court.* You all agree to that?

"*The Jury.* Yes."

The jury brought in a verdict of guilty as to both defendants. Upon appeal by Liggett, the Court of Appeals (1 Mich App 261) held that, while the charge was misleading, no new trial was required because the judge had made sure the jury was not misled. Appeal was taken to this Court upon leave granted.

Did the court err in keeping from the jury testimony by defendant Alfred Sanders concerning defendant Liggett's participation or lack thereof in the breaking and entering? The court correctly sustained the objection to the question as to whether Liggett participated in the burglary. The solicited answer required the witness to form his own judgment as to the meaning of the phrase "participate in the perpetration" and then apply that judgment as a test against the acts, if any, of the defendant Lawrence Liggett. The question went to the elements of the crime and was so understood by the trial judge in his ruling. In the form in which the question was framed there could be no assurance that the answer would be limited to a factual recital as it called for a conclusion of law by the witness. *People* v. *Row*, 135 Mich 505; *Ramsey* v. *State*, 24 Ala App 83 (130 S 674), certiorari denied, 222 Ala 37 (130 S 676); *Anderson* v. *State*, 129 Tex Crim 586 (90 SW2d 564); *State* v. *Watson*, 243 Or 454 (414 P2d 337); *State*

v. *Borde,* 209 La 905 (25 S2d 736); *State* v. *Bradley,* 231 Iowa 1112 (3 NW2d 133). Defense counsel could have questioned the witness as to the witness' knowledge of what Liggett did or did not do but counsel did not elect to pursue such a proper inquiry.

Did the charge of the court which confused the identities of the two defendants constitute prejudicial and reversible error? Was it prejudicial error for the court to imply that Lester Sanders was not brought to trial because he had no record and to state that Liggett was cross-examined and had two previous convictions?

It is settled law of this State that the trial judge should instruct the jury in criminal cases as to general features of the case, define the offense and indicate that which is essential to prove to establish the offense, even in the absence of request. A case may be reversed because the charge omits a legally essential ingredient. *People* v. *Prinz,* 148 Mich 307; *People* v. *Kanar,* 314 Mich 242, 254; *People* v. *Hearn,* 354 Mich 468. Similarly, without a request, a case may be reversed because of an erroneous or misleading charge as opposed to one which merely omits a pertinent though not legally necessary point. *People* v. *MacPherson,* 323 Mich 438, 448 *et seq.; People* v. *Guillett,* 342 Mich 1, 7; *People* v. *Oberstaedt,* 372 Mich 521, 526. Defendant has a right to have a properly instructed jury pass upon the evidence. *People* v. *Visel,* 275 Mich 77, 81.

Whenever defendants are jointly tried, it is of utmost importance that the rights of each defendant be carefully protected by the trial judge. No defendant should be convicted of the crime of another defendant. In this case, at the outset of the trial, the judge neglected to identify the defendants or their purported roles. There may have been confusion

of identities during the trial itself. Finally, in the charge to the jury there is a hopeless confusion of the defendants.

Three persons, to a greater or lesser extent, were involved in the events of November 23, 1963, in the vicinity of Ray's Radio Clinic. One of those three persons—Lester Sanders—never was charged with any offense. The case against him, if any, was disposed of by determination of the prosecuting attorney. Lester Sanders and Lawrence Liggett, according to the testimony of the police officers, were in close proximity to one another when first seen by them. Alfred Sanders, the confessed defendant, was apprehended with the stolen TVs in his possession by entirely different police officers. It was the judge's responsibility not to be confused as to the identity of these three men and, if he did become confused, no matter what other duties he may have been seeking to discharge because of an overburdened court, it was his responsibility to be doubly sure that his confusion did not confuse the jury.

When a judge candidly admits to his own confusion which was so great that the identities of two defendants were incorrectly stated at least 11 times in his charge to the jury, and when he attributes admission of two previous convictions to defendant Liggett who never took the stand, it cannot be said with any certainty that the confused judge did not mislead the jury. His attempt to cure the confusion, since it was made after the jury had arrived at its verdict, came too late. We are convinced that the errors complained of were such as to deprive defendant of a fair trial "by an impartial jury."[4] or, to use the words of the statute, "resulted in a miscarriage of justice." CL 1948, § 769.26 (Stat Ann 1954 Rev § 28-.1096).

---

[4] See US Const, Am 6; Mich Const 1908, art 2, § 19; Mich Const 1963, art 1, § 20.

In the case of *Chapman* v. *California,* 386 US 18 (87 S Ct 824, 17 L ed 2d 705), the United States Supreme Court had occasion to consider what constitutes harmless error. The Court said (p 22):

"All 50 States have harmless-error statutes or rules, and the United States long ago through its Congress established for its courts the rule that judgments shall not be reversed for 'errors or defects which do not affect the substantial rights of the parties.' 28 USC § 2111.[5] None of these rules on its face distinguishes between Federal constitutional errors and errors of State law or Federal statutes and rules. All of these rules, State or Federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not resulting in the automatic reversal of the conviction."

The Court concluded in that case that (p 25):

"The State prosecutor's argument and the trial judge's instruction to the jury continuously and repeatedly impressed the jury that from the failure of petitioners to testify, to all intents and purposes, the inferences from the facts in evidence had to be drawn in favor of the State—in short, that by their silence petitioners had served as irrefutable witnesses against themselves. And though the case in

[5] 28 USC § 2111 provides:

"On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

Federal Rule Criminal Procedure, 52(a) provides:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." See, also, Federal Rule Civil Procedure 61.

which this, occurred presented a reasonably strong 'circumstantial web of evidence' against petitioners (*People* v. *Teale and Chapman,* 63 Cal 2d 178, 197 [404 P2d 209, 220]), it was also a case in which absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts. Under these circumstances, it is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions."

To reiterate, of the three men involved in this matter, Lester Sanders, whose actions closely parallel those of this appellant, was not prosecuted; Alfred Sanders pled not guilty but confessed on the stand; Lawrence Liggett never did testify but was identified in the judge's charge to the jury *as if he were the defendant who testified and confessed!!* Surely if a man is to be convicted of a crime, it should be crystal clear he has been convicted of his own crime, not that of a confessed codefendant!

It has not been demonstrated beyond a reasonable doubt that the trial judge's instructions did not contribute to defendant's conviction.

The verdict and sentence of the trial court should be set aside and a new trial granted.

DETHMERS, C. J., and T. M. KAVANAGH and SOURIS, JJ., concurred with ADAMS, J.

BLACK, J. (*dissenting*). I stand by the opinion of the Court of Appeals (1 Mich App 261) and therefore vote to affirm.

Controlling here is that provision of the code of criminal procedure of 1927, enunciating as it does our State's fully matured appellate policy that harmless error in criminal cases is, just as in civil cases,

nonreversible error. The provision (CL 1948, §
769.26 [Stat Ann 1954 Rev § 28.1096]) :*

"Sec. 26. No judgment or verdict shall be set
aside or reversed or a new trial be granted by any
court of this state in any criminal case, on the ground
of misdirection of the jury, or the improper admis-
sion or rejection of evidence, or for error as to any
matter of pleading or procedure, unless in the opin-
ion of the court, after an examination of the entire
cause, it shall affirmatively appear that the error
complained of has resulted in a miscarriage of
justice."

The Court of Appeals from the inception of that
Court's jurisdiction has neither overlooked nor
ignored the quoted provision. See *People v. Willis,*
1 Mich App 428; *People v. Carr,* 2 Mich App 222;
*People v. Frechette,* 3 Mich App 249; *People v. Lon-
car,* 4 Mich App 281; *People v. Welsh,* 4 Mich App
395.

My reading of that part of the record on strength
of which defendant criticizes the doings of the trial
judge, all of which portrays what took place *prior*
to the "taking" of the jury's verdict, is convincing
that the judge committed no more than harmless
error; also that it does not "affirmatively appear that
the error complained of has resulted in a miscar-
riage of justice."

Kelly and O'Hara, JJ., concurred with Black, J.

Brennan, J., took no part in the decision of this
case.

---

* Citing this provision, former Justice Talbot Smith wrote in June
of 1960 for the Court (*People v. Rithol*z, 359 Mich 539, 559):

"Technical error, however, is not our test. We must be persuaded
that the errors complained of were so gross as to have deprived de-
fendant of a fair trial, that his conviction was, in truth, a mis-
carriage of justice."