ANTHONY *v.* CASS COUNTY HOME TELEPHONE CO.

1. EVIDENCE—OPINION OF EXPERT—ELECTRICITY—PHYSICIANS AND SURGEONS.

   In an action against a telephone company for negligently constructing its system of wires so that one of them came in contact with an adjacent wire of high voltage, and, because of defective insulation, killed plaintiff's team, it was competent to ask the opinion of a physician and surgeon whether it took a less powerful current to kill a horse than to kill a man, when the current required to cause death to a person was shown by previous evidence.

2. SAME—IMPEACHMENT—ADMISSIONS.

   Under the rule of collateral impeachment, no error was committed in showing that one of defendant's witnesses, an employé, had stated that he had told another employé the wires were crossed and he supposed it had been fixed, after the witness had been called and said he could not remember whether or not he had so stated.

3. SAME—EXPERT AND OPINION EVIDENCE.

   Nor was it incompetent to ask the expert how many volts of electricity would be required to kill a cow.

4. SAME.

> On rebuttal, the plaintiff was rightly permitted to ask a witness if the defendant's wires were so close to the wire which it was claimed supplied the electricity, that the cable of the adjacent system had been burned out.

5. SAME—QUALIFICATIONS OF WITNESS.

> No error occurred in refusing to permit a witness who had been clerk and superintendent of the city water and light system for a number of years, but who did not profess unusual skill and did not pretend to be an electrician, to answer the question whether or not the method of constructing defendant's wire system was proper.

6. SAME.

> Or in excluding evidence of the uses of alternating currents by electric street railways, which the testimony showed was different in detail from the system in question.

7. SAME.

> It was a question for the jury whether or not the horses were killed by the lightning, as claimed by defendant, or by a shock received from defendant's wire, which plaintiff claimed formed a circuit with the power wire of an adjacent system.

8. ELECTRICITY—TELEGRAPHS AND TELEPHONES—CONSTRUCTION—INSULATION.

> The court properly charged the jury that, if it could have been foreseen in laying the wire through the limbs of trees, and a man of ordinary intelligence would have seen, that a limb was likely to sway or break off in a storm so as to bring the wire of defendant in contact with the power wire, it was defendant's duty to have exercised such diligence.

9. EVIDENCE—WEIGHT OF EXPERT TESTIMONY.

> A charge that the testimony of expert witnesses should be weighed in the same manner as other testimony was not erroneous.

10. TRIAL—INSTRUCTIONS TO JURY.

> That the court after modifying defendant's requests to charge submitted them to the jury as proposed by defendant was harmless error.

11. SAME.

> The trial court did not err in advising the jury that the case was important and to some extent would establish a precedent, and that they should determine the questions from the testimony, excluding such matters as they might have heard elsewhere.

12. SAME—REQUESTS.
  The giving of oral requests which correctly cover the law is not error, although the practice of orally requesting instructions is not to be commended.

Error to Cass; Des Voignes, J. Submitted February 21, 1911. (Docket No. 168.) Decided April 1, 1911.

Case by Mark Anthony against the Cass County Home Telephone Company for the negligent killing of plaintiff's horses. Judgment for plaintiff. Defendant brings error. Affirmed.

*Chas. E. Sweet*, for appellant.

*James H. Kinnane*, for appellee.

STONE, J. This is an action on the case to recover the value of a span of horses belonging to the plaintiff, claimed to have been killed between 6 and 7 o'clock p. m. on July 21, 1907, as a result of the negligence of the defendant. The defendant is a corporation organized for the purpose of erecting and maintaining a telephone system in the city of Dowagiac, and prior to the death of the horses it had commenced the erection of its plant. At the time of their death, the horses were being driven by a brother of the plaintiff, who was a milkman, and in passing through an alley extending from North street in said city, and when about five or six feet from the point where a guy wire from one of defendant's poles (which guy was connected with the messenger wire of the system) entered the ground, they dropped dead in a pool of water which had formed during the rain of the afternoon.

The specific negligence of the defendant which is complained of in the declaration is that it negligently permitted one of its wires, called a "messenger" wire, to be placed and strung in dangerously close proximity to an electric wire used and owned at that time by the Beckwith estate, and which was charged with a heavy and deadly current of electricity, to wit, an alternating

current of 1,000 volts, and that by the negligence of said defendant its aforesaid messenger .wire, at a point upon said North street, came in contact with said electric wire so charged, and an arc was formed between the said messenger wire and the said electric wire, transmitting thereby a direct, heavy, and deadly current of electricity upon said messenger wire, which ran along said last-mentioned wire, and was thence transmitted over and along the guy wire aforesaid, running from thence to the ground and killing the horses. The said messenger wire .was the wire from which the defendant afterwards strung its cable. The word "messenger" is applied to the said wire to distinguish it from a wire which carries messages. There was no electricity in said wire except as it would be drawn from some electric wire, or electric disturbance in the air.

The plaintiff introduced evidence showing the circumstances, and tending to support the declaration.

At the close of the plaintiff's testimony, counsel for defendant moved the court to direct a verdict in behalf of defendant for the following reasons:

"(1) No negligence as charged in plaintiff's declaration has been proven.

"(2) No negligence by the defendant has been proven.

"(3) There is no evidence that an electric current passing over defendant's messenger wire and guy wire to the earth killed the horses of plaintiff, as charged in the declaration.

"(4) There is no evidence that the horses of plaintiff were killed through any fault or negligence of the defendant.

"(5) There is no evidence to support a verdict against the defendant, and in favor of the plaintiff, under the pleadings."

The court overruled the motion, to which ruling defendant's counsel excepted. Afterwards the defendant offered evidence in its defense and claimed that the evidence tended to show that the horses were killed by a stroke of lightning during the storm. Whether the storm had abated or not at the time was a disputed question. The

trial resulted in a verdict and judgment for the full amount of plaintiff's claim.

The defendant has brought the case here by writ of error. There are 37 assignments of error in the record. In the presentation of the case to this court the defendant's counsel has grouped the assignments of error under six heads, as follows:

(1) That the court erred in admitting testimony. This point embraces assignments of error Nos. 5, 9, 11, 12, 13, 14, 15, 17, and 18.

(2) That the court erred in excluding evidence. This point embraces assignments Nos. 2 and 8.

(3) That the court erred in overruling defendant's motion to direct a verdict. Assignment No. 6.

(4) That the court erred in refusing defendant's requests to charge, as appear by assignments Nos. 19, 20, and 21.

(5) That the court erred in its voluntary charge, referring to assignments Nos. 22 to 31, inclusive.

(6) That the court erred in giving the plaintiff's oral requests to charge, and in commenting thereon; covered by assignments Nos. 32 to 37, inclusive.

We will briefly consider such of these assignments of error as we think are worthy of consideration.

**First Group.** The fifth assignment of error is based upon the ruling of the court in permitting the plaintiff's witness Rudolph H. Von Kotch to answer the following question over objection and exception:

" *Q.* I will ask you the question this way: Recalling to your mind what you have stated of an alternating current of 1,000 volts being used in cases of electrocution to kill, now what would you say, or do you know whether it takes less voltage to kill a horse than it does a man?"

This witness was a physician and surgeon of many years' practice. We have examined the evidence as to his learning and experience with reference to experiments with electricity. It appears from the record that the contention of the experts for the defendant was that the death of the horses, probably, was caused by a bolt of lightning, or discharge of an accumulation of electricity in the

atmosphere. There was no claim that the horses were not killed by electricity. We think the question was a competent one, and there was no error in permitting its answer to be taken.

The ninth assignment of error is based upon the ruling of the court in permitting the plaintiff's witness, Charles Crossman, to answer the following question, over objection and exception:

"Q. Did you hear Mr. Frost say, in substance, to somebody in your hearing at the point where the horses were killed that Sunday night, these words, in substance: 'By G——! I told you those wires were crossed, and I supposed you fixed it, or fixed them'?"

The witness Frost had been in the telephone construction business for some years, and was in charge of the construction for the defendant from the time it started business in Dowagiac, and when the messenger wire in question was put up. He had testified as to the conditions at the place of the accident. His attention had been called to this language upon cross-examination; but he said that he did not remember whether he used it or not, and would neither admit nor deny the same. We certainly think the evidence was admissible and was proper in rebuttal. We did not suppose there was any doubt about the rule in this State as to collateral impeachment upon matters that were material. As early as *Smith* v. *People*, 2 Mich. 416, it has been held that, where the witness neither admits nor denies having made a statement conflicting with his testimony on the trial, but merely says he does not recollect having done so, his credit may still be impeached by showing that he did make the conflicting statement.

The same reasoning applies to the eleventh assignment of error relative to the testimony of the witness Myres in answer to the following questions over objection and exception:

"Q. Did he say, in substance, this, that we must all

stand together so that the blame won't fall on any one man? * * *

"*Q.* Did he direct you then, or about that time, in substance, to go up there with Doan, and fix the wire up if nobody was around there, and, if they were around there, not to do it? * * *

"*Q.* Did you go back to Mr. Frost and report to him that there were some people around there, and did he say to you, 'Well, let it go'?"

The thirteenth assignment of error also relates to permitting the witness Von Kotch to answer the following question over objection and exception:

"*Q.* From your experience, what would you say as to the number of volts, or can you say as to the number of volts, of an alternating current that would be necessary to produce death in a cow?"

This witness had testified that it would require a less number of volts to kill an animal than a man, and had testified as to how many volts were used in electrocution of men, and as to some experience he had had with electricity in the stockyards of Chicago with cattle. We think that his testimony had a tendency to aid the jury in determining the cause of the death of the horses, and that there was no error in asking the questions.

The fourteenth assignment relates to the testimony of the witness White on rebuttal, wherein he was permitted to testify in answer to the following questions over objection and exception:

"*Q.* I will ask you now if the electric—or if the telephone company, the defendant company, has constructed its wires so close to your wires that they have burned out your cable or their cable? * * *

"*Q.* What times were those?"

This witness was an electrician in the employ of the Beckwith estate at the time the horses were killed. He had testified to the voltage and, generally, as to the condition of the wire. We think that, in view of certain testimony, especially that of the witness Briggs, it was not error to permit this testimony upon rebuttal. The testi-

mony was certainly material, and whether proper in rebuttal should, in our judgment, be addressed to the sound discretion of the court. We should be reluctant to hold that there was an abuse of discretion in this instance. The sole ground of appellant's defense to the action, aside from its expert testimony, which tended to show, or sought to show, that the horses were killed by lightning, was that the company's lines were properly and carefully constructed, and the proximity of the wires was certainly material.

The fifteenth assignment of error relates to the question put to the plaintiff's expert witness Lucius B. Andrus on rebuttal over objection and exception:

"*Q.* I desire to ask you the following question: Whether one side of the generator current was connected with the ground, could it maintain a voltage at the ground, or at the point or part entering the ground, different on the ground due to there not being sufficient area of contact to bring the generator voltage to the ground potential in such a way as to make it impossible to get a shock in standing on the ground and touching the object which was grounded?"

This testimony was introduced to meet the testimony of the defendant's expert witness Hescott, and would seem to be rebuttal in its nature.

The seventeenth assignment of error should be disposed of in the same manner; and the same may be said with reference to assignment 18; the court having stricken out so much of said answer as was hearsay.

**Second Group.** The second assignment alleges error in the refusal of the court to permit the plaintiff's witness Dell Connine to answer the following question on cross-examination:

"*Q.* If you had been the superintendent of the putting up of that plant, and it was built just as you saw it there, would you have considered it properly built and properly grounded?"

This witness had been a clerk and superintendent of

water and light in the city for a number of years. He did not profess any unusual skill, and on his direct examination had been examined only as to facts, and he had testified that he did not pretend to be an electrician. We think there was no error in the refusal to allow an answer to this question, and to leave the jury to draw their own conclusion from the facts.

The eighth assignment of error relates to the refusal of the court to permit the witness Rolland M. Hescott to answer the following question:

"*Q.* I will ask you what the detail is?"

This witness was an expert introduced by the defendant, and the defendant sought to show by him the uses of alternating currents by street electric railways. This testimony having been objected to by the plaintiff's counsel, a colloquy arose between the court and counsel, whereupon the court asked this witness the following questions:

"*Q.* Is there difference in the voltage, that is, in the manner of taking care of voltage and providing for a place for loss of the respective force of electricity and to dissipate it—is there any difference in an overhead construction such as a trolley wire and T-rail? Is there any difference in construction to provide against danger?"

The witness answered:

" Yes, sir; in detail.
" *The Court:* But that detail all refers to the care and avoidance of the loss of life?
"*A.* Yes, sir.
" *The Court:* And the details in one are different from the one in the other?
"*A.* Yes, sir."

Then occurs the question by defendant's counsel, the answer to which was not permitted by the court. We do not think that this matter was material or pertinent to the issue in this case, and would tend rather to confuse than to enlighten the jury, and we are unable to see how the answer would have in any manner aided the jury. We find no error in the ruling of the court.

**Third Group.** This is the overruling of defendant's motions to direct a verdict. This is covered by the sixth assignment of error. We have read the record with care in order to appreciate the motion to direct a verdict for the defendant. This work of construction was in progress and not completed at the time of the killing of the horses. There had been testimony showing the condition of proximity and crossing of the wires, the emitting of sparks of electricity, the condition of the surface of the ground where the horses were killed, the manner of their death, the steam or fog arising from the surface, the time with reference to the storm, and whether or not it had abated, the shock received by persons there who stood on the ground, and we are unable to say that the court erred in refusing to direct a verdict for the defendant at this stage of the case. We do not hesitate to say that the case of the plaintiff was much strengthened by the testimony introduced after the plaintiff had rested his case; there being evidence that the limb was broken and left hanging when the wire was put up. We think, however, that, had the defendant rested at this point, the proof introduced by the plaintiff would have supported a judgment in his favor, and therefore there was no error in this ruling.

**Fourth Group.** This brings us to the refusal of the court to give defendant's requests to charge. There were three of these requests, and each one absolutely directed a verdict of no cause of action. We think the giving of any one of these requests would have been error, for the reason that, in our judgment, a case was made for the consideration of the jury.

**Fifth Group.** This covers the assignments of error relating to the voluntary charge of the court. By the twenty-second assignment of error it is claimed that the court erred in using this language in its charge:

"*Q.* Was it the result of this current coming down this guy wire and into the ground in the manner as claimed by the plaintiff, with the water in the pool and they stepping upon it? Was it so charged with an electrical

current as to produce death in the manner as claimed by them ?"

In our opinion there was evidence that warranted the court in submitting this question to the jury, and we see no error in it.

The twenty-third assignment of error complains of the following language of the court immediately following the last quotation:

"If it was, and you find, in the light of all the testimony in this case, that it was the proximate cause of the death of these animals, then, before you can find the defendant liable in this case, you must further find that they did not exercise reasonable care and reasonable prudence in the stringing of these wires, and in the manner in which they constructed and laid their wires upon North street and the alley in question."

There was no error in the giving of this portion of the charge.

The twenty-fourth assignment of error complains of the following language used by the court, after it had instructed the jury that if this storm was an unusual one, an unusual emergency, it need not be provided against; that if there was a board or pole, for that matter, even a limb, so broken by reason of the storm that it threw the two wires together, and they coming in contact thereby produced the damages as claimed in the case, then the defendant would not be liable. Then follows the language complained of:

"But, upon the other hand, if it could be foreseen in the laying of this wire through the trees, and through the limbs, and if it could have been foreseen, and a man of reasonable intelligence and ordinary diligence would have seen and known, then it was their duty to have exercised that reasonable diligence and that reasonable prudence."

We see no error in this portion of the charge.

The twenty-fifth assignment of error relates to the following language, referring to the stringing of the messenger wire in relation to its proximity to the electric wire, and the court said:

"Does the evidence of the men who are skilled in this direction satisfy you that it was so strung as to be safe to life and limb, that is, reasonably safe, and that they constructed this line—strung these wires and put up these poles and exercised the ordinary reasonable care and prudence such as is expected of men ?"

The court then cautioned the jury that the mere fact of the accident or killing of the horses would not warrant a recovery. We do not think this assignment is of any force.

The twenty-sixth assignment of error relates to that part of the voluntary charge which was in the following words:

" So far as the expert testimony is concerned, you will consider that and treat it in the same manner as you treat any of the other testimony in the case. The simple fact that it was offered by experts does not compel you to take their testimony in preference to any other, but you should give the testimony of the expert witnesses the same right, the same consideration, everything else being equal, as that of any other witness."

We fail to see any error in this part of the charge.

The twenty-seventh assignment of error complains of the following language in the charge:

" Of course, you will remember this: That the testimony of one line of experts is that such stated facts could not exist and result in the death of the animals. On the other side it is contended that it could."

If we were to give this language the construction contended for by defendant, in view of the testimony of plaintiff's expert witness Andrus, we are not prepared to say that there was error. We doubt, however, if it is capable of that construction. The court, in speaking of the defense, had spoken of its expert testimony. When it comes to speak of the other side, it seems to speak of the entire testimony in the case; the language being " On the other side it is contended that it could." In any view of the matter, we think there was no error, for there was

testimony on the part of the plaintiff's expert witness tending to establish the plaintiff's claim, and the question became one for the jury.

The twenty-eighth assignment of error complains because the court said to the jury that there were disputed facts in the case. We have already answered this by saying that we are of opinion that a case for the jury was made out.

The twenty-ninth and thirtieth assignments of error complain because the court used the following language:

" I will give to you a request to charge that was handed to me by counsel for the defendant, and you will receive it as the law, the same as any I have given you:

" 'If you should find from the evidence that the defendant's wire was properly and legally erected and grounded, and that the wires of the electric lighting plant were properly and safely placed and insulated; also, that there was no current passing over defendant's wires from the electric light wires, or, if there was such a current, it was because of an extraordinary storm; also, that there had not elapsed a reasonable time for either the defendant or the electric lighting company to make necessary repairs and to put the lines and wires in a safe condition; and if you find that it was such current of electricity that killed plaintiff's horses—I charge you that your verdict should be for the defendant.' "

Also the following:

" I will give No. 2 of the defendant's requests to charge:

" ' The defendant would not be liable in this case unless it was guilty of neglect in allowing this current to run over defendant's messenger wire in the manner as has been testified to by the plaintiff, or claimed by the plaintiff in this case, and such negligence must be shown in this case in order for the plaintiff to recover.' "

We have already referred to certain of defendant's requests which were refused by the court. It would seem that after refusing those requests the court had modified and given two of them in the language above quoted. This is complained of by defendant, and counsel urge that it was highly prejudicial to the defendant for the court to modify and change defendant's requests, and then

give them as though they had been proffered by the defendant. In our opinion, the question is whether the court properly instructed the jury and gave a correct rule of law to govern them in considering their verdict. We find no error in this portion of the charge, and, while we think it would have been better to have made no allusion to defendant's requests in that connection, we cannot hold it to be reversible error.

The thirty-first assignment of error complains of the following language in the charge of the court:

" You must remember that it is important in many ways as bearing upon this class of cases in the future; to some extent it is a precedent, and you should be very careful to follow out and determine this case, not from matters outside of what you have listened to on the witness stand, but what you have heard here in the way of testimony and the law, and the instructions given to you by the court in this case."

It appears that this case is against the Cass County Home Telephone Company, presumably a local company, and one in which many citizens of that county were interested. We cannot say that there was any error in the court cautioning the jury as it did upon the subject of their care, and most certainly the latter portion of the language used in the above quotation properly stated their duty. In our opinion it was not error and does not call for criticism.

Sixth Group. The sixth group of errors complains of certain oral requests of plaintiff's counsel which were given by the court during a colloquy with counsel. While this course is not to be commended for many reasons that must be apparent to the profession, such as haste and immature consideration, yet an examination of this portion of the charge fails to disclose any erroneous statement of the law. We do not agree with defendant's counsel that there was no evidence to support this portion of the charge

We have thus gone over the entire record in the case, and are of opinion that the case was a proper one for the consideration of the jury; that it was properly submitted to them by a fair charge; and that there was no reversible error in the trial of the case, or charge of the court.

The judgment below is affirmed.

BIRD, HOOKER, MOORE, and BROOKE, JJ., concurred.