PEOPLE v HERBERT BROWN
PEOPLE v HICKS
PEOPLE v ALLENSWORTH

1. WITNESSES—INTERROGATION—INCONSISTENT STATEMENTS.

The prosecution had not only the right, but the duty, to interrogate its witness about prior inconsistent statements to the police in order to refresh his recollection and induce him to correct his testimony, and to show the facts to be otherwise than stated, even though this incidentally tended to discredit the witness.

2. CRIMINAL LAW—JOINT TRIAL—HEARSAY—OBJECTIONS—PRESERVING QUESTION.

In a joint trial of three defendants for murder, each represented by his own counsel, where hearsay evidence was introduced and objection thereto was made by counsel for one of the defendants only, the objection did not serve as an objection for all defendants and the issue was waived for failure to object as to the other two defendants whose counsel failed to object.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 January 8, 1973, at Detroit. (Docket Nos. 12588, 12767, 12700.) Decided March 26, 1973.

Herbert Brown, Raymond Hicks, and Albert T. Allensworth were convicted of first-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,*

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Witnesses §§ 675, 767 *et seq.*
[2] 21 Am Jur 2d, Criminal Law §§ 127–130.

Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Harrison, Friedman & Roberson,* for defendant Herbert Brown.

*Thomas J. Olejnik,* for defendant Raymond Hicks.

*Theodore Stephens,* for defendant Albert T. Allensworth.

Before: J. H. GILLIS, P. J., and BASHARA and O'HARA,* JJ.

O'HARA, J. These are appeals of right by defendants from jury convictions of first-degree 'felony murder, MCLA 750.316; MSA 28.548. The cases have been joined here for review.

We have examined the many assignments of error and those which we believe control may thus be characterized:

*To what extent if any did the rulings of the trial judge as to the people's examination of their witness Larry Kent offend against the holding in* People v Thomas, *359 Mich 251 (1960)?*

In substance *Thomas, supra,* held that refreshing the recollection of a witness by reference to a prior statement cannot by extension become an actual impeachment without laying a proper foundation for such impeachment.

In the case at bar there is no doubt that the prosecuting attorney sought to expose the difference between Kent's trial testimony and his previ-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ous statement to the police. He attempted to do the same thing with the witness's testimony at the preliminary examination. The witness contended he could not remember either clearly or that he was not sure. At this point it was the prosecution's right and obligation to bring out the inconsistency. Under ample case precedent and eminent textbook authority he was entitled to do so. As far back as 1852 our Supreme Court put the matter very succinctly.[1] First, the Court discusses the prior rule that there must be an express denial by the witness of the statements imputed to him. Our Court then observed:

"In *Paine v Beeston,* 1 Mood & Rob, Tindal, C. J., held at *nisi prius,* there must be an express denial by the witness of the statements imputed to him, before they can be proved to discredit him. But some seven years later, Parke, B., held directly the contrary in *Crowley v Page,* 7 Car & P 787, and he says, it has always been his practice to admit the evidence where the witness said he did not remember. Prior to the Queen's case, 2 Brod & Bing 284, it does not seem to have been well established, that it was necessary to lay any foundation for evidence of previous contradictory statements of the witness, by first interrogating the witness specifically in relation to them. See *Tucker v Welch,* 17 Mass R 161. The reason assigned for requiring it is, that as the direct tendency of the evidence is to impeach his veracity, common justice requires that by first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statements already given, as well as by a reexamination to explain the nature, meaning, and design of what he is proved elsewhere to have said. 1 Green Ev §§ 462–463. It is essentially a rule of protection to the witness sought to be discredited, and ought not to be extended so far as to become a convenient shield for his iniquity. If he answers that he does not recollect having made the statements imputed to him,

---

[1] *Smith v People,* 2 Mich 415 (1852).

they may still be susceptible of such proof as, if received, would make this very answer more effective to discredit him, than the contradictory statements themselves. And there is no great hardship, to an honest witness, in allowing the evidence to be gone into after such a reply, for he has an ample opportunity to explain on his reexamination. We do not therefore think it either necessary or safe to require in all cases an express denial. If we do, a witness can never be discredited when he says he does not remember." *Smith v People,* 2 Mich 415, 417–418 (1852).[2]

Later cases strengthen this holding, *Higdon v Kelley,* 339 Mich 209, 217 (1954), quotes with approval *Hickory v United States,* 151 US 303, 309; 14 S Ct 334, 336; 38 L Ed 170, 174 (1893).

"When a party is taken by surprise by the evidence of his witness, the latter may be interrogated as to inconsistent statements previously made by him for the purpose of refreshing his recollection and inducing him to correct his testimony; and the party so surprised may also show the facts to be otherwise than as stated, although this incidently tends to discredit the witness." See also *Higgins v Monroe Evening News,* 42 Mich App 301 (1972).

For the effect of very recently decided *Hileman v Indreica,* 385 Mich 1 (1971), and illuminating comments on the distinction between impeachment and "jogging memory" the interested may refer to 18 Wayne L Rev 101, 108–112 (1971).

---

[2] We are not unaware of the dicta in *People v Durkee,* 369 Mich 618 (1963), cited by the majority in *Hill v Harbor Steel & Supply Corp,* 374 Mich 194 (1965). However, the considered weight of authority is to the contrary. *See Pringle v Miller,* 111 Mich 663 (1897); *Anthony v Cass County Home Telephone Co* 165 Mich 388 (1911); *Rodgers v Blandon,* 294 Mich 699 (1940); *Osberry v Watters,* 7 Mich App 258 (1967); *People v Graves,* 15 Mich App 244 (1968); *People v Dozier,* 22 Mich App 528 (1970); 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 438, p 540; McCormick, Evidence (2d ed), § 37, p 72; 4 Jones, Evidence (5th ed), § 937, p 1766; 3A Wigmore, Evidence (Chadbourne rev 1970), § 1037, p 1043.

We deem it unwise in this case to write extensively to this point. Kent was a res gestae witness and could have been impeached by the prosecution in any event.

The other substantial error claimed is the admissibility of hearsay testimony. It would prolong this opinion unduly to review the whole fact situation which gave rise to the remark which was admitted. It was ascribed to a witness who did not testify, and what she was supposed to have said was repeated by another witness. The witness testifying claimed that after the double killing when all of the involved people reassembled at a different location, defendant Brown, without saying anything, held up three fingers. The witness Harris asked another woman present what the gesture or sign meant. The third person is supposed to have said "three of them were dead". If there is such a thing as triple hearsay this would be a prime example thereof. It was error. The prosecution should not have asked the question. Too often overzealousness on the part of the prosecution can give rise to error that vitiates an otherwise well prepared and presented case. The trial court should not have admitted it, although objection thereto was made only by counsel for one defendant.

The error is not reversible. As to two defendants it was waived for failure to object. As to the effect of its admission on the total case it could not have been particularly damaging. Two people had been deliberately killed, perhaps executed is the better word.

It is the settled public policy of this state by legislative enactment and the judicial policy by court rule that no judgment of conviction shall be set aside for the erroneous admission of evidence,

absent a miscarriage of justice.[3] We add, of course, that there can be instances when such an error can rise to the stature of denial of due process by denying the defendant a fair and impartial trial. The whole record in this case suggests neither. The other indicia of guilt were so strong we are not moved to hold this error reversible.

We have reviewed the other assignments of error and find none which would support a reversal of the jury verdict.

Affirmed.

All concurred.

---

[3] MCLA 769.26; MSA 28.1096; GCR 1963, 529.