PEOPLE v ALLENSWORTH

Docket No. 59228. Decided August 29, 1977. On application by the defendant for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the decision of the Court of Appeals and remanded for a new trial. Certiorari denied by the United States Supreme Court March 20, 1978.

Albert T. Allensworth and two others were convicted by a jury in Recorder's Court of Detroit, Geraldine Bledsoe Ford, J., of first-degree (felony) murder. The Court of Appeals affirmed *sub nom People v Herbert Brown*, 45 Mich App 505; 206 NW2d 730 (1973). On application for delayed appeal defendant Allensworth contended that the trial court committed reversible error by instructing the jury, without objection, that the parties had agreed that the victim died during the perpetration, or attempted perpetration, of a robbery and that first-degree murder had been proved as a matter of law. The Court of Appeals, M. J. Kelly; P. J., and N. J. Kaufman and R. H. Campbell, JJ., affirmed per curiam (Docket No. 24154). Defendant applies for leave to appeal. *Held:*

1. The right of the jury to determine the existence of all elements of the offense is so fundamental that the harmless error rule is not appropriate where the judge invades that right. Unless the defendant makes an understandingly tendered waiver, under no circumstances may the trial court usurp this right by ruling as a matter of law on an essential element of the crime charged. The emphasis is not on the defendant's objection but on the trial judge's responsibility in charging the jury on all elements of the crime charged, even in the absence of request.

2. There is a difference between commenting on the evidence and making a finding of fact for the jury. When the trial judge instructs that an essential element of a criminal offense exists as a matter of law, there is reversible error.

3. The instruction removed the element of the felony and the element of death from the jury's consideration. It said there was an "agreement" that a robbery or attempted robbery had occurred and the victim had been killed as a result of it. There was no agreement. The decision of the Court of Appeals is reversed and the cause remanded for a new trial.

Justice Coleman, joined by Justice Blair Moody, Jr., dissented on the grounds that:

1. No objection to the instruction was made in the trial court nor was the issue thereafter raised on appeal. Only after the decision in *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), about 1-1/2 years after appeal, was the matter raised. In short, the issue had not been preserved so as to be in the appellate process but was newly created after the *Reed* decision. In the absence of injustice to the defendant in this case or any intrusion upon the goal of a fair process, failure to preserve the issue precludes a tardy resurrection.

2. Regardless of the retroactivity issue, the facts of this case are unlike those in *Reed* because in this case there was no dispute that the elements of first-degree (felony) murder had been established. The defense in this case was simply that the defendant was not there.

Justice Ryan, agreed with Justice Coleman that the conviction should be affirmed, but only for the reasons advanced by Justice Coleman in the second part of her opinion, summarized above.

Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Research, Training & Appeals, and *Charles P. Kellett,* Assistant Prosecuting Attorney, for the people.

Albert T. Allensworth, *in propria persona.*

PER CURIAM. A jury convicted defendant and two others of the 1971 first-degree felony murder of William Thigpen, Jr., in the City of Detroit. After the Court of Appeals affirmed defendant's conviction in *People v Herbert Brown,* 45 Mich App 505; 206 NW2d 730 (1973), defendant asked the Court to consider by a delayed appeal the issue whether the trial court reversibly erred in instructing the jury that the parties had agreed that the victim died during the perpetration, or at-

tempted perpetration, of a robbery and that first-degree felony murder as a matter of law had been proved. The Court of Appeals held in an unpublished per curiam opinion dated October 15, 1976 that defendant's failure to object to this instruction at trial was fatal to his argument on appeal. We disagree.

Charles Dexter testified that defendant and a woman entered his apartment at 2900 West Boston Boulevard to purchase cocaine. While defendant was leaving, three other men burst into the apartment with guns drawn. Defendant then pulled a gun and demanded money, drugs, jewelry, and other valuables. Dexter testified that during the course of this incident he witnessed defendant fire the single shot that killed Thigpen.

In final argument, defense counsel contended that defendant fled from Dexter's apartment when the three men entered, that his client did not kill Thigpen and that Dexter, an admitted dope dealer, was not worthy of belief.

During the course of her jury instructions, the trial judge informed the jury that she was not going into the elements of the crime charged in detail because:

"[T]here is agreement here among all of the parties about the fact that there was a robbery or attempted robbery in the apartment of Charles Dexter at 2900 West Boston Boulevard, and that in the accomplishment or attempted accomplishment of the robbery William Thigpen was killed. * * *

"I instruct you, you may accept as a matter of fact, and there need be no deliberation on your part with respect to it, Murder in the First Degree was committed in the killing of William Thigpen on April 13th, 1971, at 2900 West Boston Boulevard, City of Detroit.

"So, the principal fact in question to be decided by

you is whether or not the defendants, * * * or one of them did in fact commit the unlawful killing."

Defendant here complains that this unobjected-to instruction impermissibly removes from the jury's consideration the element of robbery or attempted robbery.

In *People v Reed,* 393 Mich 342, 349; 224 NW2d 867 (1975), we attested to our belief that the right of the jury to determine all elements of the offense is fundamental:

"Once a plea of not guilty is entered, the defendant 'has an absolute right to a jury determination upon all essential elements of the offense. * * * [F]urthermore, in a situation wherein *an understandingly tendered waiver* is not forthcoming from the defendant, under no circumstances may the trial court usurp this right by ruling as a matter of law on an essential element of the crime charged.' *United States v England,* 347 F2d 425, 430 (CA 7, 1965)" (emphasis added).

Although the defendant in *Reed* did lodge an objection to the instruction, that objection was not critical. As the foregoing quotation reveals, our emphasis was on the trial judge's responsibility in charging. In saying that the instruction to the jury must include all elements of the crime charged, we relied upon *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967), which discussed the trial judge's responsibility for instructions "even in the absence of request". Here we have at most an implied waiver and not "an understandingly tendered waiver" from the defendant.

*Reed,* too, answers the prosecutor's argument that the harmless error rule should apply. The Court said:

"We find that the right of the jury to determine all

elements of an offense is so fundamental a right that the harmless error rule is not appropriate where the judge invades that province. There is a difference between commenting on the evidence and making a finding of fact for the jury. *When the trial judge, as in the instant case, instructs that an essential element of a criminal offense exists, as a matter of law, we will find reversible error.*" 393 Mich at 351 (emphasis added).

The instant trial judge's instruction removed the element of the felony and the element of death from the jury's consideration. She said there was an "agreement" that a robbery or attempted robbery had occurred and Thigpen had been killed as a result of it. There was no agreement.

Pursuant to GCR 1963, 853.2(4), in lieu of leave to appeal, we reverse the Court of Appeals and remand the case to the Recorder's Court for the City of Detroit for a new trial.

KAVANAGH, C. J., and WILLIAMS, LEVIN, and FITZGERALD, JJ., concurred.

COLEMAN, J. *(dissenting)*. There are at least four reasons why I do not agree with the per curiam opinion:

1. The pivotal issue was not preserved at trial.

2. The issue was neither briefed nor argued when the matter was appealed to the Court of Appeals in 1973 and conviction was affirmed.[1]

3. The opinion is based upon the full retroactivity of our decision in *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975).

4. Regardless of retroactivity, the facts of this case are unlike those of *Reed* in important part.

On April 13, 1971, two persons were killed by

---

[1] *People v Herbert Brown,* 45 Mich App 505; 206 NW2d 730 (1973). There was no appeal to this Court.

bullet wounds to the head. A third, Charles Dexter, whose afro hairstyle may have saved him, suffered a gunshot crease in the head, but he lived. All were in a ransacked apartment where the police found no weapons.

Dexter testified that defendant entered his apartment with a woman, ostensibly to purchase cocaine. Three other men then entered the apartment with guns drawn. Defendant then pulled a gun and demanded money, drugs, jewelry and other valuables. Allensworth took one Audrey Fields to the bedroom and Dexter heard one shot. The woman later was found to be dead. Allensworth returned to the others, killed William Thigpen, Jr., and shot Dexter.

Allensworth's girlfriend testified that when the three armed assailants rushed in, Allensworth shoved her out of the apartment and told her to flee. She went to an apartment where Allensworth and the three said assailants joined her to divide the loot.

Defendant's defense was alibi. He said he left the apartment of Charles Dexter when the three other men burst in, that he did not engage in the robbery or kill William Thigpen, Jr., and that Charles Dexter was not a credible witness.

There was no dispute of fact excepting that defendant claimed not to have been present when the robbery and killings occurred.

Dates are of some importance to the analysis of this case:

1. On July 16, 1971 defendant was convicted.

2. On March 26, 1973 the Court of Appeals affirmed.

3. Reed was convicted March 21, 1972 (over eight months after Allensworth) and the convic-

tion was affirmed August 30, 1973, five months after Allensworth's conviction was affirmed.

4. The Reed conviction was reversed by this Court on January 21, 1975.

5. Allensworth's delayed motion for a new trial was filed on January 29, 1975, about 1-1/2 years after the Court of Appeals had affirmed his conviction. The motion was denied April 7, 1975.

6. On May 1, 1975 defendant filed an application for leave to appeal denial of the motion. Leave was granted and the conviction was affirmed on October 15, 1976 by the Court of Appeals.

The issue is whether the trial judge erred in instructing the jury that a murder in the first-degree (felony) murder had been committed and that the "principal fact in question to be decided" was whether Allensworth did in fact commit the killings.

I

No objection to the instruction was made in the trial court nor was the issue thereafter raised on appeal. Only after the *Reed* decision, about 1-1/2 years after appeal, was the matter raised. In short, the issue had not been preserved so as to be in the "pipeline" but was newly created after our *Reed* decision.

In a general sense, our jurisprudence requires a process which can anticipate finality without doing injury to the reality of "justice".

Appeal as of right brings mandatory collegial scrutiny to the trial court proceedings. Further appeal is available by grant of leave upon application to this Court. If the defendant does not raise an issue either at trial or on appeal, the courts do not usually err in failing to consider it. As here,

there may be no recognizable issue until our Court creates one at a later date.

The question then becomes whether all persons who might have raised a similar issue can claim it, absent preservation, regardless of the period intervening between timely appeal and a subsequent decision of the Court in another unrelated case. Although there must be an exception to provide for fundamentals necessary to justice, the orderly process of law suggests a beginning and an ending.

Perceiving no injustice to defendant in this case nor any intrusion upon the goal of a fair process, I agree with the Court of Appeals that the failure to preserve the issue precludes a tardy resurrection.

## II

Despite the question of retroactivity, there is a fundamental difference between the facts of *Reed* and the facts of this case. Defendant Reed was charged with first-degree murder requiring the elements of premeditation and intent. The trial judge concluded that the murder was of the first degree because the two victims' wrists and legs were bound and tied together in such ways and the killings effected in such ways as to make premeditation and intent obvious. The only question was whether Reed was the killer. Reed objected to the instruction which took from the jury the findings of premeditation and intent. This Court found that the judge could not take from the jury the duty of determining whether those requisite elements were present.[2]

---

[2] The trial judge in *Reed* had charged that it was undisputed that first-degree murder had been committed. The *Reed* Court demurred thusly:

"Such an instruction is patently wrong. The presence of two dead bodies alone cannot reveal the state of mind of the killer nor the full circumstances of the killing. Without such additional evidence it is impossible to know what degree of homicide was committed.

Here we have a felony-murder. A killing in the course of the commission of a felony is all that need be found to establish the offense of murder in the first degree (no premeditation, no intent need be found). The prosecutor presented a sound case and there was no dispute of the robbery and the killing. There was no evidence to the contrary which the jury properly could consider. The defense was simply that defendant was not there. There was no objection. Indeed, until our *Reed* decision, trial and appellate counsel apparently saw no cause to object, no injustice to defendant.

By its words, *Reed* did not lay down an absolute prohibition against removing from the jury consideration of any element of the offense, regardless of the evidence unless there is a stipulation by the defense. I would not place form over substance.

As the elements of the offense were clear and undisputed at trial and no objection raised then or upon timely appeal, we should not allow dispute to be claimed in a second appeal six years later.[3]

I would affirm.

BLAIR MOODY, JR., J., concurred with COLEMAN, J.

RYAN, J. I concur in the view that the defendant's conviction should be affirmed but my reasons therefor are limited to those advanced in part II of Justice COLEMAN's opinion.

---

"Obviously it cannot be presupposed, as the instruction did, that first-degree murder was involved for two reasons. First, it cannot logically be presumed that it was murder in the first degree without knowing that the killer had the necessary premeditation and intent. This would require proof beyond the existence and condition of the dead bodies. Second, it cannot legally be presumed for the reason that the necessary premeditation and intent are elements of the crime the prosecution must prove * * * ."

[3] *See People v Alcala*, 396 Mich 99; 237 NW2d 475 (1976), and *People v Moss*, 397 Mich 69; 243 NW2d 254 (1976).