PEOPLE v TERRY BURTON

1. CRIMINAL LAW—EVIDENCE—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

A new trial based on newly discovered evidence will be granted only if there is a showing that: (a) the evidence is newly discovered; (b) the evidence is not merely cumulative; (c) the evidence is such as to render a different result probable on retrial; and (d) the defendant could not with reasonable diligence have produced the evidence at trial.

2. CRIMINAL LAW—EVIDENCE—APPEAL AND ERROR—NEWLY DISCOVERED EVIDENCE—JUDGE'S DISCRETION.

The grant of a new trial on the grounds of newly discovered evidence is discretionary with the trial court, and the trial court's decision will be reversed by the Court of Appeals only where an abuse of discretion is apparent.

3. CRIMINAL LAW—EVIDENCE—NEWLY DISCOVERED EVIDENCE—WITNESSES.

Evidence is newly discovered if it can be shown to have been unknown to a defendant or his counsel at the time of trial; the fact that a witness who had knowledge of facts unknown to the defendant obtained that knowledge prior to the trial is not decisive.

4. CRIMINAL LAW—EVIDENCE—NEWLY DISCOVERED EVIDENCE—RESULT ON RETRIAL.

Newly discovered evidence was sufficient to render a different result probable on retrial of a defendant convicted of first-degree murder where the new evidence consisted of a statement by a codefendant, who pled guilty to a lesser charge, which implicated the codefendant's brother rather than the defendant as the second participant in the crime, and testimony of the defendant's three sisters exculpating the defendant and subjecting themselves to possible prosecution for their admitted complicity in the crime.

REFERENCE FOR POINTS IN HEADNOTES
[1–6] 58 Am Jur 2d, New Trial § 164 *et seq.*

5. Criminal Law—Evidence—Newly Discovered Evidence—Reasonable Diligence.

A defendant could not with reasonable diligence have produced at trial evidence which was presented at a hearing on newly discovered evidence where the evidence consisted of a statement by a codefendant, who could not be compelled to testify as a defense witness, and of statements by the defendant's sisters which revealed that there had been an affirmative plan prior to trial to withhold their knowledge of the crime from the defendant.

6. Criminal Law—Evidence—Probation Officers—Privilege—Statutes.

A statutory privilege afforded to communications between defendants or probationers and probation officers extends only to records, reports and case histories prepared by a probation officer; a defendant's statement made to his probation officer outside of the scope of the officer's statutory responsibility should be admissible in a trial unrelated to the probation (MCLA 791.229; MSA 28.2299).

Appeal from Calhoun, Ronald M. Ryan, J. Submitted February 1, 1977, at Grand Rapids. (Docket No. 21635.) Decided March 28, 1977.

Terry D. Burton was convicted of felony murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James D. Norlander,* Prosecuting Attorney, and *Michael J. Berezowsky,* Chief Trial Lawyer, for the people.

*F. Martin Tieber* and *Roger L. Wotila,* Assistants State Appellate Defender, for defendant.

Before: D. F. Walsh, P. J., and Quinn and Bashara, JJ.

Bashara, J. Defendant Terry Duane Burton appeals from his conviction of felony murder, MCLA 750.316; MSA 28.548.

Defendant's first contention is that the trial court erred in denying him a new trial on the basis of newly discovered evidence. Discussion of the issue requires a recitation of the complicated factual and procedural circumstances of this case.

On June 7, 1971, a robbery occurred at the Jet Gas Station in Battle Creek, Michigan. During the course of that robbery an attendant of the gas station was shot and killed by one of the robbers. At approximately 12:20 a.m. on June 8, 1971, a few hours after the robbery and killing, defendant and one Jerry Steiner were arrested and charged with first-degree murder.

The two defendants were tried separately. At defendant's trial the prosecution evidence consisted mainly of the testimony of two eyewitnesses to the robbery. Howard Youmans was one of the two attendants at the Jet Gas Station on the night of the robbery. He testified that two individuals entered the station as he and the deceased, James Hiscock, were closing for the night. The men wore women's stockings over their faces. One emptied the cash register while the other, who was carrying a handgun, stood guard over Youmans and Hiscock. The attendants were ordered to lie face down on the floor. As the robbers were leaving, one of them fired a shot into Mr. Hiscock's back. Hiscock died shortly thereafter from the wound.

At trial Mr. Youmans identified the defendant as the robber who had held the handgun and identified Jerry Steiner as the other participant.

The second eyewitness was a man known as "Poor" Sam Watkins. Watkins operated an upholstery shop directly across the street from the Jet Gas Station. On the night of the robbery he was in his shop and observed the crime from his window. Watkins testified that he recognized the defendant,

with whom he had been previously acquainted, as one of the robbers. Mr. Watkins stated that he identified the defendant when he first ran from the station, and later when the defendant allegedly ran past Watkins while removing the stocking from his face.

Watkin's statement to the police resulted in defendant's arrest shortly thereafter. Youmans, who had previously known and implicated Jerry Steiner, did not identify the defendant until a photographic showing subsequent to the defendant's arrest.

These two witnesses were the only link between the defendant and the crime. No physical evidence, such as fingerprints or a weapon, was introduced to show Burton's involvement. Strands of hair found on a discarded stocking mask near the gas station did not match the defendant's hair.

Defendant relied upon a defense of alibi. He testified that at the time of the crime he was watching television at his mother's house. After hearing of the robbery he walked to the gas station, a short distance, to see what was going on. He stated that he saw Mr. Watkins while observing the police activity at the station.

The defense presented several witnesses, including the defendant's mother, brother, and two of his sisters, to corroborate his alibi testimony. The defense also offered evidence of an argument between the defendant and Mr. Watkins two weeks prior to the robbery.

The defendant was convicted of first-degree felony murder and sentenced to mandatory life imprisonment in February 1972. The defendant was 17 years old at the time of his sentence.

Jerry Steiner was also convicted of first-degree murder. On appeal Steiner's conviction was over-

turned. On remand Steiner entered into a plea agreement with the Calhoun County Prosecutor and pled guilty to a charge of unarmed robbery. While under oath at his plea proceeding, on December of 1974, Steiner stated that the robbery at the Jet Gas Station had been committed by himself and his brother, Clinton Steiner. His plea statement exonerated defendant Burton from any part of the murder and robbery.

In March of 1972 the defendant's original appellate counsel filed a motion for new trial. An order denying the motion was not filed until July of 1974. Shortly thereafter the original counsel moved to withdraw from the case and present appellate counsel was appointed. A claim of appeal was filed alleging in part the existence of newly discovered evidence. On January 29, 1976, this Court ordered a hearing to be held on the issues of newly discovered evidence and the photographic identification procedures used.

The hearing was held on April 15 and July 15, 1976. Defendant's first witnesses were his three sisters. Bobbie Carson testified that she was a member of a black separatist organization, the Republic of New Africa, which had planned and executed the robbery. She admitted taking part in the planning of the crime. Mrs. Carson stated that the defendant was not a member of the Republic of New Africa and had not been involved in the planning of or participation in the robbery. She attributed the commission of the crime to Jerry and Clinton Steiner.

Mrs. Carson testified she did not inform the defendant or his trial attorney until after he had been convicted. Her withholding of this evidence was because she felt her brother would easily be acquitted since she knew he was innocent, and she

feared admitting complicity in the robbery. She stated that she informed the police prior to the defendant's trial by way of an anonymous phone call.

Letha Taylor testified as to being a member of the Republic of New Africa. She denied helping plan the robbery. However, she admitted assisting her sister Bobbie dispose of a jacket allegedly worn by Clinton Steiner during the robbery and sprinkle pepper over Clinton's trail in an effort to confuse tracking dogs. She maintained, as did her sister, that she withheld this information from her brother and his attorney because she felt that he would be acquitted even without her testimony and because of her fears of implication as an accessory. Mrs. Taylor reaffirmed her trial testimony that the defendant was at his mother's house watching television while the robbery took place.

Delores Burton testified that she discovered what her sisters knew about the robbery prior to her brother's trial but was told by them that the information had been given to the defendant's attorney. After the conviction, Ms. Burton was informed that the information had been withheld.

Jerry Steiner was called to the stand. Over the defendant's objections, Clinton Steiner was brought into the courtroom on the prosecution's request. Jerry Steiner testified that he had not associated with the defendant and that the defendant was not a member of the Republic of New Africa. When questioned about the robbery Steiner admitted knowledge of who had committed the crime, but refused to divulge those names out of fear for his family's safety. He did state that neither the defendant, himself, nor his brother Clinton had taken part in the robbery. He main-

tained that he had lied at his plea proceeding in order to avoid a possible life sentence on a retrial of his murder charge.

Joseph Gonzales, a Calhoun County probation officer, was the next witness. He stated that he was Jerry Steiner's probation officer, in connection with an unrelated misdemeanor charge, during the time period shortly after the Jet Gas Station robbery. He admitted receiving a phone call from Steiner concerning the robbery case. Officer Gonzales stated that at the time of the phone call he was not preparing any presentence or probationary reports concerning Mr. Steiner.

When questioned about the substance of the phone call Gonzales refused to answer on the grounds that the information he received from Steiner was a privileged communication. After a lengthy argument from both counsel the court ruled a statutory privilege did apply and that only Mr. Steiner could waive that privilege. On being recalled to the stand Steiner refused to waive the privilege.

The defendant also called Battle Creek police officer Lester Sturgeon to testify as to the photographic identification procedures used with Howard Youmans on the morning after the robbery.

At the continuation of the hearing the defendant was called to testify. He stated that although he had talked to his sisters during his trial and had asked them if they knew anything about the robbery, he had no knowledge of their information until six months after his conviction. He also testified that his trial attorney had repeatedly asked him to tell his family to come forward if they possessed any undiscovered evidence.

The trial judge denied the defendant's motion for a new trial in an opinion dated September 28,

1976. The defendant's appellate counsel thereafter brought the present appeal.[1]

The oft-expressed standard for the granting of a new trial has recently been reiterated in *People v Alexander,* 72 Mich App 91; 249 NW2d 307 (1976). There the Court stated:

"The test is set forth in *People v Boynton,* 46 Mich App 748, 750; 208 NW2d 523, 524 (1973), as follows:

" 'A new trial will be granted for newly discovered evidence only if there is a showing: (a) that the evidence is newly discovered; (b) that the evidence is not merely cumulative; (c) that the evidence is such as to render a different result probable on retrial; and (d) that the defendant could not with reasonable diligence have produced it at trial.' " 72 Mich App at 94.

See also *People v Clark,* 363 Mich 643; 110 NW2d 638 (1961), *People v Keiswetter,* 7 Mich App 334; 151 NW2d 829 (1967). The granting of a new trial on these grounds is discretionary with the trial court. We will only reverse where an abuse of discretion is apparent. *People v Alexander, supra.*

In the present case the evidence presented at the hearing easily meets the first two requirements of the *Alexander* test. There is no question that the evidence is not cumulative to the trial testimony.

The evidence is also newly discovered. The trial court held that the evidence was not newly discovered since the witnesses, particularly the defendant's sisters, had possessed their knowledge since the date of the offense. However, evidence is newly

---

[1] This Court feels it necessary to note that the defendant's attorney filed an extensive brief on appeal in May of 1975, and a supplemental brief in November of 1976. The prosecutor did not appear at the oral argument in this case and only filed a brief in February of 1977, after the case had been called for oral argument. This Court is of the opinion that a less than reasonable effort was put forth by the minimal treatment offered by the prosecution in the present case.

discovered if it can be shown to have been un-
known to the defendant or his counsel at the time
of trial. See *People v LoPresto,* 9 Mich App 318;
156 NW2d 586 (1967). The fact that the witnesses
obtained their knowledge prior to the trial is not a
decisive factor. In a practical sense to hold other-
wise would render futile virtually all future claims
of newly discovered evidence.

In the present case no showing was made that
the defendant or his counsel was aware at the
time of trial of the knowledge possessed by the
defendant's sisters or by Jerry Steiner. In fact, the
testimony shows that this information was deliber-
ately withheld from the defense.

The final two requirements of the standard for a
new trial raise more difficult problems. A thorough
review of the record reveals both the weaknesses
of the inculpatory evidence at trial and the
strength of the exculpatory evidence at the hear-
ing on remand.

In view of the weaknesses of the trial testimony
the newly discovered evidence could have a signifi-
cant impact on a second jury. In itself Jerry Stein-
er's plea statement implicating his brother as the
second robber might create a reasonable doubt as
to the defendant's guilt. Indeed, in *People v Mc-
Allister,* 16 Mich App 217; 167 NW2d 600 (1969),
an affidavit by a person other than the defendant
implicating the affiant and a third person as the
sole perpetrators of an offense was sufficient to
allow a panel of this Court to summarily overturn
the trial court's denial of a new trial. Adding to
Steiner's statement the corroborating testimony of
the defendant's sisters, who by their testimony
would subject themselves to possible prosecution,
we reach the conclusion that a reasonable doubt as
to the defendant's guilt would be probable.

This Court also finds that the defendant could not with reasonable diligence have produced this evidence at trial. Jerry Steiner, being a codefendant in the case, could have exercised his Fifth Amendment right to remain silent if called as a defense witness. The defendant testified at the hearing that he asked his sisters if they had any additional information about the robbery and received no response. The defendant's attorney made several requests through the defendant for any new evidence. The testimony of Mrs. Taylor and Mrs. Carson shows an affirmative plan to withhold this knowledge from the defense in hopes of an acquittal. It cannot be said that even an exercise of diligence in excess of what was actually undertaken would have uncovered this evidence.

We conclude the defendant has met all four of the requirements of showing newly discovered evidence. Since a retrial is required, some of the defendant's other issues on appeal need to be discussed to avoid recurrence.

The defendant contends that the statutory privilege afforded to the communications of defendants and probation officers does not include within its ambit the phone conversation between Jerry Steiner and Joseph Gonzales.

The statute in question, MCLA 791.229; MSA 28.2299, reads as follows:

"All records and reports of investigations made by probation officers, whether state or local, for courts of criminal jurisdiction in cases referred for such investigation by such courts, and all case histories of probationers are hereby declared to be privileged or confidential communications not open to public inspection. Judges and probation officers shall have access to such records, reports and case histories. The probation officer or the assistant director of probation, or his representa-

tive, shall permit the attorney general, the auditor general, and law enforcement agencies to have such access. The legislative intent is that the relation of confidence between the probation officer and probationer or defendant under investigation shall remain inviolate."

A review of the case law reveals no prior decision delineating the scope of this privilege.

The defendant argues that the first sentence of the statute limits the privilege to communications made in the process of preparing presentence reports or other records or reports of probation officers. This limited scope of the privilege would exclude the communication in the present case since officer Gonzales testified that he was not engaged in preparing any reports at the time of Steiner's phone call. The prosecution responds that the last sentence of the statute evidences a legislative intent to apply the privilege to all communications between a probationer or defendant and a probation officer.

We do not agree with the prosecution that the privilege extends to all communications. The statute expressly limits the privilege to records, reports, and case histories prepared by a probation officer. This intended limitation is not overcome by the final sentence since the relation of confidence is stated to exist between the probation officer and a "probationer or defendant *under investigation*". (Emphasis added.) We are mindful in so interpreting the scope of the statute that the possible introduction of exculpatory evidence should not be hindered by the operation of a technical rule of evidence. See *Chambers v Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Therefore if the statement in the present case was made to the probation officer outside of the scope of his statu-

tory responsibility under this act, it should be admissible.

Defendant claims that the photographic identification procedures employed in regard to witness Youmans were suggestive and subsequently tainted his in-court identification. On remand a pre-trial hearing should be held to determine the propriety of the procedures used and, if error is found, whether an in-court identification would be supported by an independent basis.[2] See *People v Hutton,* 21 Mich App 312; 175 NW2d 860 (1970). At this hearing the rules expressed in *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), will be applicable.

Defendant contends that the trial judge erroneously instructed the jury on the elements of felony murder. On retrial the judge's instructions are to be governed by this Court's recent opinion in *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976).

The defendant's other allegations of error are without merit.

Reversed and remanded.

---

[2] The trial court, in ruling that the identification testimony of Youmans was admissible, incorrectly used the legal test of independent basis. The court held that Youmans' in-court identification was not error since the police, acting on Mr. Watkin's statement, had an independent basis for the defendant's arrest. The independent basis test does not refer to the arrest, but rather to whether the identifying witness's in-court testimony is free of any taint created by a suggestive pre-trial procedure.