Accordingly, the judgment of the District Court is AFFIRMED.

**Ivie BOWEN, Petitioner-Appellant,**

v.

**Dale FOLTZ, Respondent-Appellee.**

**No. 83–1558.**

United States Court of Appeals, Sixth Circuit.

Argued April 15, 1985.

Decided May 28, 1985.

Rehearing and Rehearing En Banc Denied July 16, 1985.

James M. Cohen, argued, Southfield, Mich. (Court appointed), for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Michigan, Edgar L. Church, Jr., argued, Lansing, Mich., for respondent-appellee.

Before CONTIE and WELLFORD, Circuit Judges, and EDWARDS, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Petitioner [1] was tried along with three co-conspirators on three counts of first degree felony murder arising from his role as organizer of an October 1, 1974, robbery that resulted in the deaths of Joseph, Salvatore, and Michael Biondo. Lanetia Avereyette,[2] who accompanied petitioner in the getaway car, later turned state's evidence, and testified that prior to the robbery attempt petitioner picked up Leatherwood, Irby, and Peters, the three co-conspirators, and drove with them to the store. She saw petitioner go into the market and return shortly thereafter telling the others that "everything was like he said." She and petitioner remained in the car while the co-conspirators entered the store. She testified that they returned less than five minutes later with Leatherwood and Peters complaining that Irby had shot everyone present. Sheila Ducksworth, a customer in the store during the robbery, testified that petitioner briefly came into the store and left; five minutes later the three co-conspirators entered the store, committed the robbery and shot the Biondos. Her testimony was corroborated by another eye witness, Richard Anderson.

Petitioner and his co-conspirators were convicted on three counts of first degree felony murder in Michigan state court. Petitioner received the mandatory sentence of life imprisonment, M.C.L.A. § 750.316, on each count, without parole.

At trial the state judge gave the following instruction concerning felony murder:

The murder statute, as I have given it to you, provides in pertinent part the following:

All murder which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder in the first degree.

Now that's the part of the statute that this prosecution has been brought. And I will read it again to you ...

Now you will note that I haven't said anything at all about premeditation or malice aforethought. See in common law murder the prosecution would have had to prove that, premeditation, deliberation and malice aforethought.

*The law automatically makes that type of a killing murder in the first degree. All the prosecution has to do under this law is to prove beyond a reasonable doubt to your satisfaction, the jurors, you jurors, that [unreadable] Biondo, Salvatore Biondo and Michael Biondo were killed during the perpetration of a robbery, or attempt[ed] perpetration of a robbery. If they can [unreadable] satisfaction beyond a reasonable doubt, then the law says this is murder in the first degree.*

(emphasis added).

■ Petitioner requests habeas corpus relief claiming that because the Michigan Supreme Court failed to apply a new rule of law retroactively, his constitutional rights were violated. Petitioner also claims ineffective assistance of counsel on his original appeal as of right from his conviction. We AFFIRM the district court's denial of habeas relief on all grounds.

In *People v. Aaron*, 409 Mich.App. 672, 733–34, 299 N.W.2d 304 (1980), the Michigan Supreme Court prospectively abrogat-

---

**1.** Petitioner has prosecuted this habeas action pro se. Although court appointed counsel represented him at oral argument, counsel adopted petitioner's commendable appellate brief.

**2.** Lanetia evidently drove the getaway car away from the grocery after the attempted robbery.

ed the longstanding felony-murder rule in Michigan, holding:

> [I]n order to convict a defendant of murder as that term is defined by Michigan case law, it must be shown that he acted with intent to kill or inflict great bodily harm or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm. *We further hold that the issue of malice must always be submitted to the jury.*
>
> The first-degree murder statute will continue to operate in that all murder committed in the perpetration or attempted perpetration of the enumerated felonies will be elevated to first-degree murder.
>
> *This decision shall apply to all trials in progress and those occurring after the date of this opinion.*

(emphasis added). The Michigan courts have steadfastly stuck to the decision not to give retroactive effect to the new rule. *People v. King,* 411 Mich. 939, 308 N.W.2d 425 (1981); *People v. Smith,* 108 Mich.App. 338, 342, 310 N.W.2d 235 (1981). Petitioner claims that prospective only application of a new rule of criminal law is unconstitutional.

The Supreme Court has addressed in a civil context the propriety of refusing to make a new rule of law retroactive:

> This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the constitution of the United States is infringed by the refusal.
>
> We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed, there are cases intimating, too broadly [citations omitted], that it *must* give them that effect; but never has doubt been expressed that it *may* so

treat them if it pleases, whenever injustice or hardship will thereby be averted .... The choice for any state [in deciding to or not to make a decision retroactive] may be determined by the juristic philosophy of the judges of her courts, the conceptions of law its origin and nature. We review not the wisdom of their philosophies, but the legality of their acts. The State of Montana has told us by the voice of her highest court that with these alternative methods open to her, her preference is for the first [no retroactivity].

*Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364–65, 53 S.Ct. 145, 148–49, 77 L.Ed. 360 (1932) (emphasis in original). In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court addressed in a criminal context the propriety of not making the *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), exclusionary rule retroactive in its application. The Court held:

> Under our cases it appears (1) that a change of law will be given effect while a case is on direct review, ... and (2) that the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set "principle of absolute retroactive invalidity" but depends upon a consideration of "particular relations ... and particular conduct ... of rights claimed to have become vested, of status, of prior determinations deemed to have finality; and of public policy in the light of the nature both of the statute and of its previous application."

*Id.* 381 U.S. at 627, 85 S.Ct. at 1736.

The Ninth Circuit has addressed the identical issue presented here, and held:

> the power of the judiciary to limit or preclude the retroactive application of a rule in appropriate cases cannot be questioned. Moreover, the decision of a state court to limit the retroactive effect of a rule involving state law does not raise a Federal question.

*Benson v. Carter,* 396 F.2d 319, 323 (9th Cir.1968), *cert. denied,* 393 U.S. 1080, 89 S.Ct. 852, 21 L.Ed.2d 773 (1969).

It is clear that petitioner's constitutional rights were not violated by the State Supreme Court's decision to apply its new rule only prospectively.

Intimately tied to his retroactivity argument is petitioner's contention that his counsel's failure to challenge the felony murder rule when petitioner specifically requested him to do so constitutes ineffective assistance of counsel in violation of his sixth amendment rights. During the pendency of petitioner's appeal from his conviction,[3] a Michigan Court of Appeals presaged the state supreme court's *Aaron* decision and held that to sustain a murder conviction the prosecution must always show malice. *People v. Fountain,* 71 Mich.App. 491, 499, 248 N.W.2d 589 (1976). Petitioner brought this ruling to his counsel's attention, but his counsel failed to pursue this issue.[4] Petitioner claims that his case rather than *Aaron* could have been the vehicle for the highest court's abrogation of the felony murder rule, if only his counsel had been willing to raise the issue.

■ The Supreme Court, in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) articulated a high standard which must be met before a court may reverse a conviction on ineffective assistance of counsel grounds. One of the requirements is that "defendant must show ... a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. The Court provided little guidance concerning the degree of certainty needed to show a "reasonable

probability" of differing results, but at very least a defendant must make more than merely speculative assertions. This, the instant petitioner has failed to do.

■ The felony murder rule had long been accepted in the State of Michigan prior to the court of appeals decision in *People v. Fountain,* 71 Mich.App. 491, 499, 248 N.W.2d 589 (1976). For example, the felony murder rule was used in *People v. Page,* 198 Mich. 524, 535–38, 165 N.W. 755, 759 (1917), to uphold a defendant's conviction: "A murder is a murder in the first degree under [felony murder statutes], though it is casual and unintended." Indeed, subsequent to *Fountain,* another appeals court upheld the validity of the felony murder rule and its lack of an intent to kill element. *People v. Till,* 80 Mich.App. 16, 263 N.W.2d 586 (1977). In *Till* the court noted that the Michigan felony murder statute is a verbatim duplication of Pennsylvania's statute, which had been in force since 1794, and which had been construed as not requiring a showing of intent to kill. *Id.* 80 Mich.App. at 23–25, 263 N.W.2d at 591. The *Fountain/Till* schism continued unabated, *see People v. King,* 94 Mich.App. 53, 288 N.W.2d 377, 378 n. 1 (1979), until the state supreme court resolved the conflict by abrogating the felony murder rule in its 1980 *Aaron* decision.

We agree with Judge Newblatt's carefully reasoned characterization of petitioner's claim of prejudice as "far too speculative." The abstract possibility that petitioner's case could have been the vehicle for the abrogation of the felony murder rule does not meet the high *Strickland* standard. Thus we do not find that petitioner was denied effective assistance of counsel.

---

3. The same Sixth Amendment standards of reasonably effective assistance of counsel during trial is applicable to appeals as of right. *Gilbert v. Sowders,* 646 F.2d 1146 (6th Cir.1981).

4. Shortly after petitioner's counsel filed his brief on direct appeal, petitioner wrote him and asked that he raise the felony murder issue, which the lawyer failed to do.

An accused does not have a constitutional right to have his counsel press nonfrivolous points requested by his client if counsel decides as a matter of professional judgment not to press those points. *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Thus, his counsel's failure to raise the issue upon request is not *per se* grounds for reversal, rather petitioner must show that the failure constitutes ineffective assistance of counsel.

Petitioner also challenges the trial judge's remarks as part of the jury instructions that the murder victims had rights to life, liberty and pursuit of happiness. We do not countenance this instruction despite the unusually tragic acts which were the subject of the indictment. We do not, however, find the instruction of sufficient prejudice to mandate the setting aside of the conviction.

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on such direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"

*Henderson v. Kibbee*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977).

We conclude that these inappropriate remarks did not "infect the entire trial" under the circumstances of this case.

We carefully have considered the remainder of petitioner's arguments, but find them without merit, essentially for the reasons expressed by the district court. Accordingly, we AFFIRM the lower court's denial of habeas corpus relief.

CONTIE, Circuit Judge, dissenting.

Since the record in this case plainly discloses that petitioner's conviction was obtained through the efforts of appellate counsel which were both unreasonable and prejudicial, our Constitution and the expressed intention of our legislators, 28 U.S.C. § 2254, requires that the writ of habeas corpus be granted.

The Supreme Court has recently affirmed our conclusion that "[a] first appeal as of right ... is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." *Evitts v. Lucey*, — U.S. —, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985) (footnote omitted); *Lucey v. Kavanaugh*, 724 F.2d 560 (6th Cir.1984). However, since in *Lucey* the parties stipulated that counsel was ineffective, the Court concluded that "[w]e therefore need not decide the content of appropriate standards for judging claims of ineffective assistance of appellate counsel." *Id.* at 833–34 (citing *Strickland v. Washington*, 466 U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *United States v. Cronic*, — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)).

The standards articulated in *Strickland*, although designed for trial-type proceedings, can be adapted for application to appellate ineffectiveness claims and have guided other courts.[1] *Strickland* provides that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [appeal] cannot be relied on as having produced a just result." 104 S.Ct. at 2064. *Strickland* requires a two-part nonsequential analysis into the attorney's performance and the prejudice resulting therefrom. *Id.*

On the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 2065. However, "[j]udicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

---

1. Courts assessing the alleged ineffectiveness of appellate counsel have followed the standards enunciated in *Strickland* or standards reasonably similar thereto. *Schwander v. Blackburn*, 750 F.2d 494, 502 (5th Cir.1985); *Mitchell v. Scully*, 746 F.2d 951, 954 (2d Cir.1984); *Cape v. Francis*, 741 F.2d 1287, 1301–02 (11th Cir.1984); *Parton v. Wyrick*, 704 F.2d 415, 416–17 (8th Cir.1983).

conduct from counsel's perspective at the time." *Id.*[2]

Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068. However, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* In cases of error by appellate counsel, an evaluation of prejudice will involve deciding whether the result of the appeal would have been different had counsel acted competently.

In judging the reasonableness of counsel's decision not to raise a particular issue, courts have emphasized that "counsel's failure to raise issues on appeal that only later gain 'judicial recognition' does not constitute ineffectiveness." *Francois v. Wainwright,* 741 F.2d 1275, 1285 (11th Cir. 1984); *Branch v. Cupp,* 736 F.2d 533, 537 (9th Cir.1984). Further, "counsel need not brief issues reasonably considered to be without merit." *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984); *O'Guin v. Foltz,* 715 F.2d 397, 401 (6th Cir.1983). Neither of these propositions excuses counsel's failure to raise the malice issue on appeal, however, since three Court of Appeals decisions had held that failure to instruct on malice was reversible error before petitioner's appeal had been submitted on June 6, 1977. These decisions came, respectively, eight months (*People v. Fountain,* 71 Mich.App. 491, 248 N.W.2d 589 (1976)), two months (*People v. Terry Burton,* 74 Mich.App. 215, 226, 253 N.W.2d 710 (1977)), and seven weeks (*People v. Martin,* 75 Mich.App. 6, 12–13, 254 N.W.2d 628 (1977)) prior to submission of petitioner's appeal. Further, petitioner alleges that he informed counsel of the *Fountain* decision four to five months before the case was submitted on appeal. Therefore, the malice issue is not one which only later gained judicial recognition nor is it one which might be said to be without merit.

That petitioner's trial counsel may have been negligent in failing to demand an instruction on malice at trial does not excuse the incompetence of appellate counsel. Appellate counsel need not raise errors that the appellate court will not consider due to a procedural default such as failure to object at trial. *Smith v. Wainwright,* 741 F.2d 1248, 1260 (11th Cir.1984); *Francois,* 741 F.2d at 1285. However,

> there may be some cases in which trial counsel's failure to preserve error will not excuse appellate counsel's failure to raise the error, if, for example, the state appeals courts only sporadically apply the procedural bar, or if the error is of such magnitude that the appellate court would likely consider it plain or fundamental error.

*Id.* at 1286. Therefore, whether an appellate counsel acts reasonably in failing to raise errors not first raised at trial requires consideration of a state's procedural rules.

M.C.L.A. § 768.29 provides in pertinent part that "[t]he failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." However, this procedural bar has not been consistently applied, especially in criminal cases with respect to questions of intent.

> It is settled law of this State that the trial judge should instruct the jury in criminal cases as to general features of the case, define the offense and indicate that which is essential to prove to estab-

---

**2.** In *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the Court found that the Constitution does not give an indigent the right to compel appointed counsel to raise all colorable or nonfrivolous points requested by the client if the attorney, in his professional judgment, declines to present those points. *Id.* at 3312, 3314. In this case, regardless of whether Bowen requested counsel to raise the issue of the absence of an instruction on malice, counsel was required to do so in order to render the assistance guaranteed by the Sixth Amendment.

lish the offense, *even in the absence of request.* A case may be reversed because the charge omits a legally essential ingredient.... Similarly, *without a request,* a case may be reversed because of an erroneous or misleading charge as opposed to one which merely omits a pertinent though not legally necessary point.... Defendant has a right to have a properly instructed jury pass upon the evidence.

*People v. Liggett,* 378 Mich. 706, 714, 148 N.W.2d 784 (1967) (emphasis added); *People v. Townes,* 391 Mich. 578, 587, 218 N.W.2d 136 (1974); *People v. Allen,* 109 Mich.App. 147, 159, 311 N.W.2d 734 (1981).

Accordingly, in light of the courts' interpretation of the procedural bar and the *Fountain, Martin,* and *Burton* cases, it is clear that reasonably competent counsel familiar with Michigan law would have raised the malice issue despite the absence of an exception below. It is likewise clear that petitioner was prejudiced by counsel's failure to raise the issue. This conclusion is compelled by the fact that Judge Bronson who concurred in the *Fountain* decision also sat on the panel that considered petitioner's appeal and by the fact that a trial court's failure to instruct on an element of the crime is not subject to harmless error analysis under Michigan law. *People v. Allensworth,* 401 Mich. 67, 71, 257 N.W.2d 81 (1977). This establishes at a minimum the reasonable probability demanded by *Strickland* that the result of the proceeding would have been different. Therefore, since petitioner is being held in custody in violation of the Due Process Clause of the Fourteenth Amendment, the writ of habeas corpus should be granted as required by 28 U.S.C. § 2254(a).[3]

The majority's construction of the due process guarantee of effective assistance of appellate counsel in light of *Lucey* effectively limits that case to its particular

facts. However, if the principles enunciated therein have any meaning beyond those facts, they certainly apply to the instant case. Rejecting so severe a limitation on recent precedent, I dissent.

---

3. Whatever action the Michigan Supreme Court would have taken with respect to petitioner's case is irrelevant. Petitioner's contention is that he was deprived of effective assistance of counsel before the Michigan Court of Appeals, not the Supreme Court. While the fact that the Michigan Supreme Court might have been more likely to have considered petitioner's appeal had counsel raised the absence of an instruction on malice indicates an increased likelihood of prejudice, this is not dispositive of the prejudice inquiry in this case.