955 F.2d 44
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Monteith HARRIS, Petitioner-Appellant,
v.
John JABE, Respondent-Appellee.
 No. 91-1360.
 United States Court of Appeals, Sixth Circuit.
 Feb. 21, 1992.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner-appellant Monteith Harris appeals the dismissal of his habeas corpus petition filed under 28 U.S.C. § 2254. For the following reasons, we AFFIRM the dismissal of the petition.
 
 I.
 
 2
 On January 14, 1975, petitioner was convicted in Recorder's Court, Detroit Michigan, of first degree murder committed in the perpetration of a robbery. The convictions stemmed from the robbery of a ninety-one year old man in his house. The case against petitioner rested almost exclusively on the testimony of an accomplice, who had been granted immunity from prosecution for this crime in exchange for testifying. Petitioner has since appealed his conviction through the state court system (twice) and has also filed a previous federal habeas petition.
 
 
 3
 Petitioner specifically alleges as grounds for relief several issues. First, he claims a cognizable violation of his constitutional right to effective assistance of counsel on appeal, due to the failure of his counsel to raise certain issues petitioner deems crucial. Second, petitioner alleges error by the trial court in admitting a prior conviction of his into evidence for purposes of impeaching his testimony, in failing to give, over defendant's objections, an instruction on lesser included offenses, in failing to give a specific instruction regarding accomplice testimony, and in allegedly instructing the jury that it could presume intent. We address each of these contentions in turn.
 
 II.
 
 4
 A. Ineffective Assistance of Appellate Counsel
 
 
 5
 A first appeal as of right is not adjudicated in accord with due process of law if the appellant does not have effective assistance of counsel. Evitts v. Lucey, 469 U.S. 387, 396, reh'g. denied, 470 U.S. 1065 (1985). The standard of review for assessing whether appellate counsel was unconstitutionally ineffective follows the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Smith v. Jago, 888 F.2d 399, 405 n. 1 (6th Cir.1989), cert. denied sub nom Smith v. Alexander, 110 S.Ct. 2572 (1990). Petitioner must show both that his counsel was so deficient as to not constitute the "counsel" guaranteed by the Sixth Amendment, and that the inadequate performance prejudiced his defense. Strickland, 466 U.S. at 687. There must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.
 
 
 6
 Petitioner fails both prongs of this standard. In light of the fact that the arguments allegedly unprofessionally absent from his first appeal were all subsequently presented to Michigan courts on later appeals, and all found wanting, we have difficulty finding the required degree of deficient performance. Petitioner has no constitutional right to have every possible legal issue raised on appeal, Jones v. Barnes, 463 U.S. 745 (1983), and tactical choices regarding issues on appeal "are properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir.) cert. denied, 111 S.Ct. 565 (1990). Petitioner has not demonstrated a sufficiently inadequate or prejudicial ineffectiveness of his appellate counsel.
 
 B. Accomplice Testimony Instruction
 
 7
 Petitioner alleges a violation of his constitutional rights in the failure of the trial court to give a jury charge explicitly instructing them of the inherent weaknesses in accomplice testimony. Petitioner feels this was crucial to his case, inasmuch as the principal evidence against him was the testimony of his accomplice, Michael Champion. Champion was granted immunity in this case for his testimony.
 
 
 8
 At trial, petitioner testified that he was not involved in the robbery in any fashion, and had never been to the victim's house. Champion testified that petitioner did participate in the robbery. Initially Champion testified that petitioner did not encounter the victim, but did actively engage in robbing the house. On the subsequent day of testimony, after being refreshed by a previous statement given to police, Champion testified that petitioner was directly involved not just in the robbery, but in the fatal injuries.
 
 
 9
 Petitioner now alleges that his right to a fair trial was compromised by the failure to include an instruction on the dubious nature of accomplice testimony. His argument has no merit for two reasons. First, the limitations of such testimony were adequately addressed by the instructions given. The court charged the jury as follows:
 
 
 10
 Now you have heard a great deal about the credibility of the witnesses, and in that regard I do instruct you that every person who testifies under oath is a witness, and you are the sole and exclusive judges of the credibility of the witnesses. In determining the credibility of a witness you may consider any matter that has a tendency and reason to prove or disprove the truthfulness of his testimony and that includes but it is not limited to the following: his or her demeanor while testifying in the manner in which he or she testified; the character of his testimony; the extent of his capacity to perceive, to recollect or communicate about any matter about which he testifies; the extent of his opportunity to perceive any matter about which he testifies; the existence or non existence of any bias or motive or interest, whether that be in the outcome of the case or in any other regard....
 
 
 11
 The instructions explicitly charged the jury to evaluate the credibility of the witness, and to consider any "bias or motive or interest, whether that be in the outcome of the case or in any other regard." This is clearly sufficient.
 
 
 12
 Additionally, to rise to the level of reversible constitutional deprivation, the jury charge considered as a whole must be so inadequate that we can conclude that after viewing the evidence in the light most favorable to the prosecution, no rational jury could find the essential elements of the crime beyond a reasonable doubt.
 
 
 13
 Here, the weaknesses in Champion's testimony and character were fully explored by each of the three sets of defense counsel. The interests and immunity of Champion were referred to repeatedly, in both opening and closing arguments, and comprised the focus of extensive cross-examination. Petitioner's defense consisted of a complete contradiction of Champion's testimony, even as to whether petitioner had any involvement with the crime whatsoever. We cannot say that no rational jury could discredit the testimony of petitioner and believe he was guilty of the elements of the robbery offense, and hence the felony murder.
 
 C. Lesser Included Offense Instruction
 
 14
 Petitioner also alleges deprivation of his constitutional right to a fair trial in the failure of the trial court to include in the jury charge elements of lesser included offenses. Petitioner expressly objected to such a charge at trial, against the advice of his counsel. We do not consider petitioner's rights to have been violated, for a number of reasons.
 
 
 15
 First, petitioner was not entitled to such an instruction under state law. The Michigan Supreme Court did hold, after petitioner's conviction, that a trial judge should include lesser included offenses sua sponte, even over a defendant's objection in felony murder cases. People v. Jenkins, 395 Mich. 440 (1975). Jenkins was denied retroactive application, however, in a case involving one of petitioner's co-defendants. People v. Till, 411 Mich. 982 (1981). Therefore, petitioner's conviction was valid under state law. We have no basis for concluding petitioner's constitutional rights have been implicated by this omission. United States ex rel Peery v. Sielaff, 615 F.2d 402, 404 (7th Cir.1979), cert. denied, 446 U.S. 940, reh'g. denied, 448 U.S. 912 (1980) (omission of lesser included offense "fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding").
 
 
 16
 Further, petitioner's conviction rested on the testimony of his accomplice that he was a participant in the robbery. He denied any involvement. The jury accepted the accomplice's testimony and discredited petitioner's testimony. Lesser included offenses would have had no relevance to the determinations the jury had to make.
 
 
 17
 D. Admission of Evidence of Prior Convictions
 
 
 18
 Petitioner alleges a constitutional violation in the admission of his prior conviction for a similar offense. The trial judge allowed evidence as to one such conviction, disallowed evidence as to another, and specifically instructed the jury, both at that point and in the charge, that the conviction was relevant only for impeachment purposes. We see no error in the discretion exercised by the trial court, and cannot find the trial itself, viewed in its entirety, to have been so infected as to deprive petitioner of a fundamentally fair trial.
 
 E. Instructions Presuming Intent and Malice
 
 19
 Finally, petitioner claims the trial court's instructions on the elements of the crime were in violation of Sandstrom v. Montana, 442 U.S. 510 (1979), and that Sandstrom should be applied retroactively. We disagree as to both contentions.
 
 
 20
 Petitioner's murder conviction was for felony murder, occurring during a robbery. The trial court instructed the jury that they must find malice aforethought, either express or implied. The court elaborated on implied malice, stating that it encompassed those situations in which a killing occurs as a direct cause or result of the perpetration or attempt to perpetrate a felony enumerated in the statute. The court went on to state that the jury must only find a specific intent to commit the elements of the underlying felony for the offense to constitute first degree murder. The Michigan Supreme Court has since ruled that such an instruction is inadequate, but gave that ruling prospective application. People v. Aaron, 409 Mich. 672 (1980). No constitutional rights are implicated by the prospective application of Aaron. Bowen v. Foltz, 763 F.2d 191 (6th Cir.1985).
 
 
 21
 Petitioner further alleges, however, that in elaborating on the felony murder dimension of the charge, the court violated Sandstrom by instructing the jury to presume intent. The language at issue is as follows:
 
 
 22
 First, you must consider the testimony and then decide whether or not these Defendants, or any of them, did kill and murder [the victim]; and secondly, whether that did occur during the commission, or an attempt to commit a robbery. There may have been no specific intention to kill at all, only the intention to rob, but [if] there was a murder committed during the robbery, it would still be murder in the first degree. The statute is based on theory that every sane person contemplates and intends every natural ordinary and usual consequences of his voluntary acts, unless the contrary appears from the evidence. Where the persons are shown to have killed by an act, the natural ordinary consequences of which would be to produce death, then it is presumed in law that such death was intended or contemplated by the slayer. If a man assaults another in such manner that in natural and ordinary circumstances produced death, the law presumes such person did intend to take a life. That, no doubt, is why the legislature decided that murder committed while engaged in a robbery is automatically murder in the first degree.
 
 
 23
 Petitioner alleges that these instructions violate the Sandstrom prohibition on instructions that create a presumption and thereby relieve the state of its burden of proof of establishing beyond a reasonable doubt all elements of an offense. We disagree. The instructions above do not instruct the jury to presume anything; rather, they inform the jury of the thinking of the legislature in establishing the offense of felony murder, apart from the felony. The judge specifically stated that "the statute [creating the offense] is based on [that] theory," and concluded his discussion of presumed intent with the statement "that, no doubt, is why the legislature decided that murder committed while engaged in a robbery is automatically murder in the first degree." Thus, the court did not instruct the jury to presume any elements of the offense.
 
 
 24
 Furthermore, we have held that Sandstrom is not to be given retroactive application. Cain v. Redman, No 91-1187 (6th Cir. filed Oct. 24, 1991). Petitioner therefore has no cognizable Sandstrom claim.
 
 III.
 
 25
 For the foregoing reasons, we AFFIRM the decision of the District Court denying petitioner a writ of habeas corpus.