Demetrius BROWN, Petitioner–
Appellant,

v.

Sherri BURT, Warden, Defendant–
Appellee.

No. 01–2188.

United States Court of Appeals,
Sixth Circuit.

April 21, 2003.

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

BEFORE: MERRITT and DAUGHTREY, Circuit Judges; and RUSSELL,* District Judge.

RUSSELL, District Judge.

The Appellant appeals the district court's denial of his petition for a writ of habeas corpus. Before the court below the Appellant raised three claims: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) denial of due process resulting from cumulative errors. In addition, the Appellant contests the district court's decision to deny his request for an evidentiary hearing prior to ruling on his petition for the writ of habeas corpus. For the reasons outlined below we conclude that the district court handled this case properly and AFFIRM its decisions in all respects.

## I.

On Wednesday, July 15, 1987, two men were shot and killed—and a third shot and wounded—at 12203 Archdale in the city of Detroit. The Appellant and a co-defendant, Jerome Lundy, were charged with committing these crimes. On March 17, 1988, a jury convicted the Appellant of two counts: assault with intent to murder and possession of a firearm during the commission of a felony. The jury hung on two additional counts of first-degree premeditated murder.

John Jackson, who was shot and wounded during the incident, and who had lived at the house on Archedale for about a year, testified as a witness for the prosecution. Jackson testified that on the week-

end prior to the shooting Gerald Williams took over the home at gunpoint and used the location to sell crack cocaine. Williams locked Jackson in his house's basement for three days. During that time Williams, Rodney Gragg, Lundy and the Appellant all came and went from the house; at one point, Jackson testified, the Appellant pointed a 22–caliber rifle at him. Jackson knew that either the Appellant or Lundy was called "Jerome," but he did not know which one.

Jackson testified that on July 15, 1987, while he sat in his living room, he heard shots from the kitchen where Williams, Gragg, Lundy and the Appellant were meeting. The Appellant then came to the living room carrying a gun, and when Jackson attempted to disarm him, the Appellant shot Jackson in the chest. Lundy then shot Jackson in the back and the neck, and he and the Appellant fled. Jackson managed to leave the house to tell his neighbors to call the police. He then waited at the front of the house for the police and emergency medical teams to arrive.

Jackson was hospitalized for ten or eleven days in the aftermath of the shooting. Williams and Gragg died.

At his trial the Appellant testified that he had been in the Archedale house when he heard Lundy fire shots at Williams and Gragg. He also testified that he ran away from the house after the first shots were fired, and heard one or two other shots fired at Jackson only after he had left the house. The Appellant testified that Lundy subsequently threatened him to ensure his silence.

Jackson and Sergeant Val Knight of the Detroit Police Department both testified at the Appellant's trial about the investigation of the shooting. On July 16, 1987, while Jackson was in the hospital, Sergeant Knight showed him two photographs. Jackson positively identified the photographs as the two individuals who shot him, but he did not know their names. One photograph Knight showed Jackson was a mug shot of Lundy; the other photograph was a color Polaroid of the Appellant, who had no prior criminal record.

After Jackson identified the photographs, Detroit Police Officer Danny Maynard signed a search warrant affidavit stating that Knight had showed "police photographs" to Jackson and that Jackson had identified Lundy and the Appellant as the shooters. The police executed the warrant that afternoon and the police seized a photograph of the Appellant from his home, as reflected in the police department's papers documenting the search.

The jury returned a guilty verdict on the charge of assault with intent to murder and possession of a firearm during the commission of a felony. The Appellant was sentenced to twenty-to-sixty years imprisonment for the assault conviction and two additional years for the firearms conviction.

The Appellant appealed his conviction on three grounds, including ineffective assistance of counsel, but the Michigan Court Appeals affirmed it on January 30, 1992. The Michigan Supreme Court denied his application for leave to appeal on May 29, 1992. The Appellant then filed two motions for collateral relief from judgment pursuant to M.C.R. 6.500. The first was denied on March 25, 1993, and the Michigan Court of Appeals and the Michigan Supreme Court denied his request for leave to appeal. The second motion for collateral relief was denied on August 9, 1995, and again leave to appeal was denied by the Michigan Court of Appeals and the Michigan Supreme Court.

The United States Magistrate Judge conducted a hearing on the Petitioner's motion for a writ of habeas corpus, issued

942

a report, and recommended its denial. Both sides filed timely objections, but the district court adopted the report and recommendation in its entirety. On September 4, 2001, the district court granted a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(3) and Fed. R.App. P. 22(b). The district court did not grant the Petitioner's request for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2) before ruling on the Appellant's petition.

## II.

A denial of a petition for a writ of habeas corpus is reviewed *de novo. See Rogers v. Howes,* 144 F.3d 990, 992 (6th Cir.1998). The district court's findings of fact are reviewed for clear error. *See Wilson v. Mitchell,* 250 F.3d 388, 393–94 (6th Cir. 2001). Because the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), our review of a state court decision on the merits is governed by the standards that law established. *See Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). The AEDPA, as amended at 28 U.S.C. § 2254(d), provides that relief shall not be granted to a claim that was decided on the merits unless the decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States...." 28 U.S.C. 2254(d)(1).

The Appellant's first two claims are of ineffective assistance of trial counsel and ineffective assistance of appellate counsel.[1] To establish these claims, the Appellant must show that his counsel's performance was deficient and that the deficiency preju-

diced the defense. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Appellant must overcome the presumption that his counsel's action might be considered "sound trial strategy" and must show a reasonable probability that but for the unprofessional errors, the results of the proceeding would have been different. *Id.* at 689–94.

■ The Appellant rests his claim of ineffective assistance of trial counsel on four grounds. First, he argues that his counsel did not impeach Knight on cross-examination by showing Knight committed perjury. The Appellant argues that Knight must have obtained the Polaroid he showed him only after Knight searched the Appellant's home. This argument, however, suggests that the only possible photographs of the Appellant came from his house. This is obviously untrue and the Appellant presents no evidence that cross-examining Knight about the Polaroid's origin would have revealed any perjury. In the absence of such evidence, there is no prejudice to the Appellant as required by *Strickland.*

■ Second, the Appellant argues that his trial counsel should have moved to suppress Jackson's identification as suggestive and the photograph from the search as a result of Knight lying to obtain the search warrant. The Appellant presents no evidence, however, that Knight lied to obtain the search warrant because there is no evidence that the Polaroid showed to Jackson was the same picture seized in the search. Moreover, even if the photograph had been suppressed, Jackson had an independent basis to make an in-court identifi-

---

1. The Appellee's invite us to affirm the district court's decision on the grounds that the Appellant's case is procedurally barred by MC.R. 6.508(D). Like the Magistrate Judge, however, we find the record of the state court proceedings insufficient to determine whether or not the Appellant's claims are procedurally barred, and therefore decline the Appellee's invitation.

cation of the Appellant because of the nature and duration of the time they had spent together before the shooting. *See Neil v. Biggers*, 409 U.S. 188, 199–201, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Again, the Appellant has not shown evidence that suggests he was prejudiced by his trial counsel's conduct.

■ Third, the Appellant argues that his counsel should have impeached Jackson's testimony that both he and Lundy shot him by calling Michelle Braxton as a witness. Braxton gave a statement to the Appellant's trial counsel that Jackson had told her only one man, Lundy, shot him. Before trial, however, she indicated that she would not repeat that statement on the stand. At best, Braxton's testimony could only have been used to impeach Jackson, not as substantive evidence;[2] given her indication that she would not testify favorably, the trial counsel's decision not to call her to testify was sound and the Appellant's case was not prejudiced. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

■ Fourth, the Appellant argues that his counsel should have made an offer of proof regarding an alleged excited utterance by Jackson to the officers at the scene that "Jerome did it." As the court below recognized, this statement may have impeached Jackson's testimony. The problem, however, is that Jackson had already testified that he did not know both Lundy and the Appellant's names—he only knew that one of them was called "Jerome." Thus, the impeachment value of Jackson's excited utterance is very low. This uncertainty, combined with the district court's analysis that it was sound trial strategy to avoid focusing on Jackson's injuries at the time of the statement, is

sufficient to show that the Appellant was actually prejudiced by his counsel's performance.

The Appellant rests his ineffective assistance of appellate counsel argument on the grounds that his appellate counsel was ineffective for raising only one ground for his trial counsel's ineffectiveness—the failure to call Braxton as a witness—and not the other three grounds discussed above. It is well established, however, that appellant counsel is not required to raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). We are also reminded that the Appellant "does not have a constitutional right to have his counsel press non-frivolous points requested by his client if counsel decides as a matter of professional judgment not to press these points." *Brown v. Foltz*, 763 F.2d 191, 194 n. 4 (6th Cir.1985) (*citing Jones v. Barnes, supra*). Given that we have already decided that the Appellant's claims for ineffectiveness assistance of trial counsel are without merit, it follows that the Appellant's trial counsel was not ineffective for failing to raise them.

As his last claim in support of his writ of habeas corpus, the Appellant argues that his right to due process was violated by the cumulative weight of the errors committed. Having failed to establish that any constitutional errors occurred in the state proceedings, however, the Appellant cannot claim that his rights to due process were violated.

### III.

■ Finally, the Appellant argues that the district court erred in not granting him an evidentiary hearing pursuant to 28

---

**2.** The trial court made this finding during a *Ginther* hearing. *People v. Ginther*, 390 Mich.

436, 212 N.W.2d 922 (1973).

U.S.C. § 2254(e)(2) prior to ruling on his petition for a writ of habeas corpus. The Appellant seeks this hearing to expand the record regarding how the police obtained the photograph shown to Jackson in the hospital, why Braxton refused to testify at trial for the Appellant, and what the outcome was of an alleged internal investigation into Knight by the Detroit Police Department.

■ We review a district court's decision not to conduct an evidentiary hearing for an abuse of discretion. *Alley v. Bell*, 307 F.3d 380, 389 (6th Cir.2002). Under § 2254(e)(2)(B), a petitioner like the Appellant is only entitled to an evidentiary hearing when "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, not reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Even if the district court had granted the Appellant's request for a hearing, and even if that hearing had disclosed the facts as the Appellant alleges, those facts are insufficient to establish—by clear and convincing evidence—that no reasonable factfinder would have found the Appellant guilty of the assault and firearm charges. Jackson identified the Appellant as one of his assailants unequivocally; that testimony alone was enough to convict the Appellant.

For the foregoing reasons, the judgment of the district court is AFFIRMED.